<u>No. 04-14-00812-CV</u>

IN THE COURT OF APPEALS
FOR
THE FOURTH SUPREME JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/6/2015 4:39:33 PM
KEITH E. HOTTLE
Clerk

IN THE ESTATE OF CONSUELLA PERKINS ULBRICH,
DECEASED

DOUGLAS J. ULBRICH, Appellant
v.
ROBERT HOPE, DARLENE WILSON, and DEBRA BYRD,
Appellees

<u>APPELLEES' APPENDIX</u>

| <u>EXHIBIT NUMBER</u> | <u>DOCUMENT</u> |
|---|---|
| 1 | Fourth Court of Appeals Memorandum Opinion entered in The Estate of Consuella Perkins Ulbrich, deceased, Appeal Number 04-12-00514-CV, dated September 18, 2013 |
| 2 | Bexar Appraisal District Homestead Designation 1998-2011 for 3939 Starhill, San Antonio, Texas; Douglas Ulbrich Letter to Bexar County Appraisal District dated April 7, 2011, changing Homestead Designation from 3939 Starhill, San Antonio, Texas, to Medina County property; Business Records Affidavit |

Bexar County Appraisal District Statement for 2011 with Homestead Exemption on 3939 Starhill, San Antonio, Texas

Designation of Homestead executed by Douglas Ulbrich, dated April 11, 2011, designating Medina County property as Homestead

Bexar County Appraisal District Statement for 2012 with Homestead Exemption removed on 3939 Starhill, San Antonio, Texas

Deed of Trust dated January 17, 2013, Certified Copy, Douglas Ulbrich grants Deed of Trust on 3939 Starhill, San Antonio, Texas, to Wayne and Mary Hale to secure personal loan made to Douglas Ulbrich; filed Bexar County Public Records, Book 15907, Page 1490; Document PI2-20130013938-10

Affidavit of Debbie Byrd, dated October 12, 2014

Transcript Excerpt, Hearing held January 11, 2011, Medina County Court, the Honorable Vivian Torres presiding

Excerpt from Clerk's Record, Volume 1 of 2, Trial Court No. 2011PC0686, In the Probate Court Number 1 of Bexar County, Texas, Page 0130; Designation of Homestead filed of Record at Volume 02077, Page 8350

10       Order Granting Motion for Summary Judgement entered on November 5, 2014, by Probate Court #1 in The Estate of Consuella Perkins Ulbrich, deceased, Cause Number 2011-PC-0686

11       Findings of Fact and Conclusions of Law entered by Probate Court #2

12       Texas Probate Code §271

13       Texas Constitution, Art. XVI, §52

# APPELLEES APPENDIX

# EXHIBIT 1



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00514-CV

**IN THE ESTATE OF** Consuella Perkins ULBRICH, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2011-PC-0686
Honorable Tom Rickhoff, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: September 18, 2013

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This is an appeal from an order awarding exempt property for the surviving spouse pursuant to section 271 of the Probate Code. Douglas J. Ulbrich, the surviving spouse, appeals from the order. On appeal, he argues that (1) the probate court erroneously determined that res judicata and collateral estoppel applied to this case; (2) the probate court "erroneously denied [his] application to designate his rural homestead as his probate homestead" pursuant to section 271; (3) the probate court "erroneously denied [his] application to set aside exempt property including homestead and exempt personal property for his use and benefit as surviving spouse pursuant to" section 271; and (4) there is insufficient evidence to support the probate court's finding that his San Antonio home is his probate homestead pursuant to section 271. We affirm in part, and reverse and remand in part.

# BACKGROUND

Consuella Perkins Ulbrich died intestate on August 22, 2010, survived by her husband, Douglas J. Ulbrich, and her adult children from a previous marriage ("the heirs"). At the time of Consuella's death, she and Douglas owned 160 acres in Medina County and a home in San Antonio, Texas. The administrator of Consuella's estate filed the underlying probate action in Medina County, Texas. However, the Medina County court transferred the case to Bexar County. On January 17, 2012, Douglas then filed in Bexar County probate court an "Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271." In his application, Douglas requested that the probate court set aside the Medina County ranch, "his rural homestead," as exempt property for his use and benefit. He also requested the following personal property be set aside as exempt property for his use and benefit:

(1) home furnishings including family heirlooms;
(2) provisions for consumption;
(3) farming and ranching vehicles and implements;
(4) tools, equipment, books and apparatus used in a trade or profession;
(5) wearing apparel;
(6) jewelry not to exceed 25% of the aggregate limitations prescribed by section 42.001(a);
(7) two firearms;
(8) athletic and sporting equipment including bicycles;
(9) his 2001 Ford van;
(10) the following animals and forage on hand for their consumption:
    (A) two horses, mules or donkeys, and a saddle, blanket and bridle for each;
    (B) 12 head of cattle;
    (C) 60 head of other types of livestock including goats and deer; and
    (D) 120 fowl; and
(11) household pets.

Douglas also claimed as exempt property (1) survivor benefits and rights in funds on deposit in joint bank accounts; (2) items in his safe deposit box; and (3) his seven-tenths undivided interest in a house located in Hondo, Texas. Douglas set the application for a hearing.

On February 3, 2012, the probate court held the hearing, and Douglas's counsel told the court the "purpose of the hearing today is to consider Mr. Ulbrich's application and verified affidavit as surviving spouse to set aside exempt property including the homestead and separate property pursuant to the Texas Probate Code section 271." Counsel for the heirs then informed the probate court that "we'd like to invoke the rule when taking testimony." The probate court asked, "Okay. And are we going to take testimony?" When counsel replied, "Possibly," the probate court replied, "Well, let's talk about it first." Then, instead of taking testimony, the probate court merely questioned Douglas's counsel and the heirs' counsel, and the respective lawyers presented arguments to the court:

> Court: Okay. So Starhill [the San Antonio residence] had a — it was purchased during the marriage, right?
>
> Counsel for Douglas: Yes, Your Honor.
>
> Court: Okay. And there was a homestead exemption attached to it at some time, right?
>
> Counsel for Douglas: For tax purposes.
>
> Court: Okay. Well, for whatever purpose. And then he claimed that as his homestead in some kind of proceeding up in Medina County. Or did he?
>
> Counsel for Douglas: I wasn't at the hearing, but I have seen an excerpt from the transcript where he was asked by Ms. Arlitt if the house in San Antonio on Starhill was his homestead and he said yes.
>
> Court: Well, it doesn't matter what he said. Was it his homestead or wasn't it his homestead? How long — since 07 was it declared a homestead or what? Was it ever declared a homestead?
>
> Counsel for Douglas: It was not declared a homestead by affidavit or filing any designation of homestead in the deed records. He told the tax office he wanted to claim the San Antonio house as his homestead for tax purposes.

The probate court continued to ask questions of Douglas's counsel about the ranch in Medina County. The following then occurred:

Court: Okay. Let me get that straight. His wife passes in 2010.

Counsel for Douglas: Yes.

Court: How long were they married?

Counsel for Douglas: How long were you married?

Douglas: 45 years.

Court: I was going to say, it must be a long time. So all these kids she represents are older than 45?

Counsel for Douglas: I believe they're in their 50s and 60s.

Court: Well, they'd have to be.

Douglas: They're my step-children.

Court: Yes, I got that. Okay. All right. Okay. So he inherits 80 acres in '79 from his parents. Okay. So sometimes that's separate property if you leave it alone and don't muck with it too much. And then he gets – when did he get the rest of it?

Counsel for Douglas: At the same time.

Court: Oh, he did.

Counsel for Douglas: Yeah. He bought it from his siblings.

Court: Oh, he buys it?

Counsel for Douglas: Yeah.

Court: He buys it from his siblings. How long was he married when he bought it from his siblings?

Counsel for Douglas: What year were you married?

Douglas: '66, I think.

Counsel for Douglas: He was married in '66, so about 13 years he had been married when he bought the other 80 acres of the ranch from the siblings.

Court: Can he trace separate property money to buy the other 80 acres?

Counsel for Douglas: No.

- 4 -

Court: Okay. There's no trace.

Counsel for Douglas: There's no denial that 80 acres of the ranch was community property during the marriage.

Court: Oh, okay. Well, that straightens it out. Okay. What do you want to see happen today?

Counsel for Douglas: I would like to see the court rule that Mr. Ulbrich has the right to designate his rural homestead as the probate homestead.

Court: The Bexar County homestead?

Counsel for Douglas: No, Medina County homestead. His rural homestead, the 160 acre ranch.

Court: Why would I get involved in Medina County property?

Counsel for Douglas: Because you have jurisdiction over the parties and the estate. And Mr. Ulbrich filed a designation of homestead in Medina County in April of last year. And then he filed an affidavit this last month designating his 160 acre Medina County homestead as his rural homestead. And we want the court to recognize that that designation is effective as to his right to claim a life estate in the homestead that he and his wife had designated previously and that he was free to choose to designate after her death.

The heirs' counsel responded that while the Ulbrichs had a residence at their Medina County ranch, they "had always homesteaded at the home here in San Antonio."

Court: Now is that something official that was sent to authorities and everything? The homestead in San Antonio?

Counsel for heirs: Yes. That was filed [at the] Bexar County Appraisal District, and Mr. and Mrs. Ulbrich designated the house on Starhill in San Antonio for many years, took full tax advantage –

Court: Okay. Fine.

Counsel for heirs: -- took all the advantages.

Court: And now he wants the ranch in Medina County.

Counsel for heirs: And it –

Court: And how does that affect your people?

- 5 -

Counsel for heirs: It affects our people because – they would like to settle up the estate. There were – there's 160 acres total in Medina County at the ranch. 80 acres, I don't think anyone contests that the first 80 acres was inherited by the Ulbrichs from his family.

Court: Okay. And is that – I mean we know which 80 acres that is?

Counsel for heirs: We don't know that yet.

Court: You will.

The court continued its questioning and eventually asked Douglas's counsel if he could have Douglas "draw me the first 80 [acres] and the second 80 [acres on here]." As the court was looking at a plat of the ranch, the reporter's record of the hearing abruptly concludes with the probate court stating, "Here, let's stay off the record."

On February 13, 2012, the probate court signed the following order:

**PARTIAL ORDER ON DOUGLAS J. ULBRICH'S APPLICATION AND VERIFIED AFFIDAVIT OF DOUGLAS J. ULBRICH, SURVIVING SPOUSE, TO SET ASIDE EXEMPT PROPERTY INCLUDING HOMESTEAD AND SEPARATE PROPERTY PURSUANT TO TEXAS PROBATE CODE SECTION 271**

CAME TO BE HEARD on the 3rd day of February 2012, Douglas J. Ulbrich's Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271, and after hearing the arguments of counsel and reviewing the evidence presented, in part, the Court:

FINDS that Consuella Perkins Ulbrich, deceased, died on August 22, 2010.

FINDS that at the time of her death, Consuella Perkins Ulbrich, deceased, was married to Douglas J. Ulbrich.

FINDS that at the time of her death, Consuella Perkins Ulbrich, deceased, did not have any minor children.

ADJUDGES, DECREES AND ORDERS that on August 22, 2010, the homestead of Douglas J. Ulbrich and Consuella Perkins Ulbrich, deceased, was 3939 Starhill, San Antonio, Bexar County, Texas.

Douglas did not appeal from this order. Instead, on February 14, 2012, he filed a "Motion to Set a Hearing on Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property, Pursuant to Texas Probate Code Section 271." On February 17, 2012, he filed an amended motion and set the matter for a hearing. On March 2, 2012, the probate court held another hearing. Douglas's counsel told the probate court they were ready to proceed and "Mr. Ulbrich is here to offer evidence." The probate court then asked, "[D]idn't we have this hearing before?" Douglas's counsel responded, "We set the hearing about three weeks ago, but we didn't introduce any evidence." Again, the probate court asked counsel questions, and the attorneys presented argument. At the end of the twelve page reporter's record, the probate court states that he is "going to let the order stand."

On March 12, 2012, Douglas filed a "Motion to Reconsider Entry of Partial Order and to Enter Final Order on Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271" and set the matter for a hearing. He also filed a jury demand with regard to his application. On March 20, 2012, the probate court held another hearing:

> Counsel for Douglas: [W]e're here on a motion to reconsider your partial order that was issued stating that the homestead at the time that Ms. Ulbrich died was the San Antonio residence. After the last hearing we had, I filed a jury demand, paid a jury fee, set jury trial.
>
> Court: For what?
>
> Counsel for Douglas: For June 18th.
>
> Court: For what?
>
> Counsel for Douglas: To decide what the exempt property was and also to decide the other things that were not decided by your partial order. And namely to establish where Mr. Ulbrich's probate homestead is going to be. And looking at your partial order, Judge, I can't see where it is a final appealable order. If it was a final order on the issue of setting aside exempt property and designating the probate homestead it could be appealed, but since you titled it a partial order —

-7-

The trial court then took a short break, after which discussions continued off the record until the court recessed the proceedings.

On March 22, 2012, Douglas's counsel filed an "Amended Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Personal Property Pursuant to Texas Probate Code Sections 271 & 272" and set the matter for a hearing. On April 26, 2012, the probate court held another hearing. Counsel for Douglas told the probate court,

> We're ready to proceed on the amended motion. Let's see – I believe it – okay. It's a motion to reconsider entry of partial order and to enter final order on application and verified affidavit of Douglas Ulrich, surviving spouse, to set aside exempt property including homestead and separate property pursuant to the Texas Probate Code Section 271.

The probate court then questioned whether the court had already decided the matter. When Douglas's counsel replied that the court had not, the probate court stated, "I thought we made as good a record as we could, and I said take it up to the Fourth Court, let them--" Douglas's counsel interrupted,

> Our position, Your Honor, is that there is no record that – you haven't ruled on the motion. You did file and sign a partial order deciding that the property in San Antonio was the homestead at the time of Mrs. Ulbrich's death. But my position is that that doesn't either grant or deny the pending motion to set aside exempt property pursuant to section 271.

The probate court replied, "Okay. Well, anyway, try and make a good record and take it up there if you want and get it done." After discussions with counsel about the case, the following occurred:

> Court: Here, let me do this. Didn't [Douglas] already fully testify about this homestead thing?
>
> Counsel for Douglas: He hasn't testified at all. He submitted an affidavit and verified –
>
> Counsel for heirs: You've already taken testimony from him, Your Honor.
>
> Court: We haven't? We have or haven't?

Counsel for heirs: You took it here. They took it down in Hondo and then took it here. You've already had him on the stand.

Court: I had him on the stand here.

Counsel for heirs: Already done that.

Counsel for Douglas: I don't believe so, Your Honor. He hasn't testified about these issues.

Counsel for heirs: Before —

Court: Here, wait. We will have —

Counsel for heirs: -- before you ruled.

(Discussion off the record)

Counsel for Douglas: He may have sat right there but it wasn't testimony on the amended motions.[1]

Court: Well, you keep filing amended motions after I have already fully ruled. But I just want you to have a clear record. In case you're right about it being an appealable order, you can appeal it. That's why we have the Fourth Court. Okay.

On July 30, 2012, the heirs filed "Affirmative Defenses: Claims of Res Judicata and Collateral Estoppel," arguing that the probate court signed a final judgment with respect to homestead in February and that Douglas did not appeal from that order. Thus, the heirs claimed "res judicata and collateral estoppel [applied] to the issue and claim of the location of the homestead" at the time of Consuella's death. On July 31, 2012, the probate court held another hearing, stating that there had already been "three hearings, and I ruled the same way every time." Douglas's counsel argued that the February order was not a final, appealable order. After hearing argument of counsel, the probate court stated that res judicata applied.

---

[1] The reporter's record reflects that Douglas did not testify under oath on the witness stand and, indeed, no witness testified under oath before the Bexar County probate court at this point in the proceedings.

- 9 -

On August 6, 2012, Douglas filed a "Motion to Enter Order on Motion to Reconsider Entry of Partial Order and to Enter Final Order on Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271" and set the matter for a hearing. On August 10, 2012, the probate court again held a hearing. At the beginning of the hearing, the probate court stated, "Wait a minute. I've got this February 13th order. And it says, orders that on August 22, 2010, the homestead of Ulbrich, deceased, and you know, Consuella, was 3939. I mean, I said it. How many times do I [have] to say it?" Douglas's counsel again argued that the February 13, 2012, order was not an appealable order. The parties then discussed which personal property should be exempt. One of the adult children, Debra K. Byrd, testified that five vehicles owned by Douglas and Consuella were purchased after their marriage. She also testified about the value of personal property owned by Douglas and Consuella. Douglas then testified about what he considered to be his personal separate property and what community personal property he wanted to claim as exempt for his personal use. At the end of the hearing, the parties and the probate court again discussed whether the February 13, 2012, order was a final order and whether res judicata applied as a result. That same day, August 10, 2012, the probate court signed two orders. The first one, "Order Awarding Exempt Property," stated the following:

> On August 10, 2012, came on to be heard Douglas J. Ulbrich's Application and Verified Affidavit of Douglas J. Ulbrich, Surviving Spouse, to Set Aside Exempt Property Including Homestead and Separate Property Pursuant to Texas Probate Code Section 271, and premises considered, the Court:

> *The Homestead:*

> ORDERS that the homestead located at 3939 Starhill, San Antonio, Texas shall be set aside for the benefit of Douglas J. Ulbrich as the surviving spouse homestead.

FURTHER ORDERS that Douglas J. Ulbrich shall maintain the homestead to include paying costs of taxes, insurance, and maintenance of the homestead as long as he retains the homestead.

*Exempt Property:*

FINDS that the personal property of the Estate is exempt;

ORDERS that the exempt personal property of the Estate shall be awarded as follows:

    a. Douglas J. Ulbrich is awarded the list of exempt personal property shown on Exhibit "A" attached hereto; and

    b. The Heirs, Robert Hope, Darlene Wilson, and Debra Byrd are awarded the personal property shown on Exhibit "B" attached hereto.

FURTHER ORDERS that all exempt personal property shown on Exhibit "B" shall be made available for pick-up by the Heirs within twenty-four hours of signing of this Order.

FURTHER ORDERS that all exempt personal property shown on Exhibit "B" shall not be destroyed, damaged or in any way tampered with prior to pick-up by the Heirs, Robert Hope, Darlene Wilson, and Debra Byrd.

FURTHER ORDERS the cost of packing and pick-up of the exempt personal property on Exhibit "B" shall be borne by the Heirs, Robert Hope, Darlene Wilson, and Debra Byrd.

The probate court also signed an Order Finding Res Judicata and Collateral Estoppel Apply. In that order, the probate court found the following:

1. The "issue of the location of the homestead of Consuella Perkins Ulbrich, deceased, at the time of Decedent's death was fully and fairly litigated [at the hearing] on February 3, 2012."
2. The parties "litigated the location of Decedent's homestead on February 3, 2012, as adversaries."
3. The "issue of the location of Decedent's homestead was determined and the court entered its final, appealable order finding the location of the homestead of Decedent to be 3939 Starhill, San Antonio, on February 13, 2012."
4. Douglas J. Ulbrich "did not appeal from the court's order dated February 13, 2012."
5. The court order "dated February 13, 2012, is final and no longer appealable."

6. The affirmative defenses of res judicata and collateral estoppel "apply to the court's order dated February 13, 2012, and the court's specific finding that 3939 Starhill, San Antonio, Texas, was the homestead of Consuella Perkins Ulbrich, deceased, at the time of Decedant's death."

Douglas then filed a notice of appeal.

## HOMESTEAD

Before the inventory, appraisement, and list of claims is approved or before the filing of the affidavit in lieu of the inventory, appraisement, and list of claims, a surviving spouse may apply to the probate court pursuant to section 271(b) of the Probate Code "to have exempt property, including the homestead, set aside by filing an application and a verified affidavit listing all the property that the applicant claims is exempt." *See* TEX. PROB. CODE ANN. § 271(b) (West Supp. 2012). An applicant under section 271(b) "bears the burden of proof by a preponderance of the evidence at any hearing on the application." *Id.* § 271(c). The probate court "shall set aside property of the decedent's estate that the court finds is exempt." *Id.*

On appeal, Douglas argues that the evidence is factually insufficient to show that the Starhill home was his and Consuella's homestead at the time of her death and that the "great weight and preponderance of the evidence shows that his Medina County ranch should be set aside as his probate homestead." The heirs counter that the issue of homestead was decided in the probate court's February 13, 2012, order from which Douglas did not appeal and thus the probate court correctly determined that res judicata and collateral estoppel apply. Douglas responds that the February 13, 2012, order was not an appealable order because the probate court did not grant or deny his entire application pursuant to section 271, as there were still personal property issues remaining. Thus, we must first determine whether the February 13, 2012, order was an appealable order from which Douglas should have appealed.

Generally, appeals may be taken only from final judgments. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). "Probate proceedings are an exception to the 'one final judgment' rule; in such cases 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues." *Id.* (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001)). "The need to review controlling, intermediate decisions before an error can harm later phases of the proceeding has been held to justify this rule." *Id.* (quotations omitted). "Not every interlocutory order in a probate case is appealable, however, and determining whether an otherwise interlocutory probate order is final enough to qualify for appeal, has proved difficult." *Id.* "In the past, courts relied on a 'substantial right' test to determine whether an ostensibly interlocutory probate order had sufficient attributes of finality to confer appellate jurisdiction." *Id.* Under that test, "once the probate court adjudicated a 'substantial right,' the order was appealable." *Id.* In 1995, the supreme court attempted to clarify this test, noting that "while adjudication of a 'substantial right' was one factor to be considered, equally important" was "earlier precedent requiring that the order dispose of all issues in the phase of the proceeding for which it was brought." *Id.* Therefore, "[t]o sidestep 'potential confusion' about the appropriate test for jurisdiction," the court adopted the following test:

> If there is an express statute, such as the one for complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings are also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Id.*

In *De Ayala v. Mackie*, 193 S.W.3d at 578, the supreme court held that the trial court's order denying a plea to the jurisdiction and refusal to remove an executor was not appealable. The court explained that "an order denying a motion to dismiss an entire proceeding for want of subject-

matter jurisdiction is more like a prelude than a finale." *Id.* "It certainly does not dispose of a claim that, if asserted independently, would be the proper subject of a lawsuit." *Id.* Moreover, the supreme court explained that "the trial court's order was interlocutory because it did not dispose of all parties or issues in a particular phase of the proceedings." *Id.* at 579. "Because an order denying a plea to the jurisdiction and refusing to remove an executor does not end a phase of the proceedings, but sets the stage for the resolution of all proceedings, the order is interlocutory." *Id.*

In support of their arguments, both parties cite *Majeski v. Estate of Majeski*, 163 S.W.3d 102 (Tex. App.—Austin 2005, no pet.). In *Majeski*, the decedent's adult daughter and surviving spouse had a dispute over a tract of land owned by the decedent before her marriage and on which she and her spouse lived and worked. *Id.* at 104. The decedent's surviving spouse claimed a homestead right, while her adult daughter argued that the rental of portions of the property defeated the spouse's homestead rights. *Id.* After an inventory of the estate was filed, the surviving spouse, claiming a life estate in the property as the decedent's surviving spouse, sought a judgment declaring the tract of land, including any improvements, rental properties and business on the tract of land, to be his homestead. *Id.* at 105. The decedent's adult daughter countered, asking the court to determine what portion of the property was the surviving spouse's homestead, and also asking the court to declare "the value and character of all items of personal property" and what assets should be given to the spouse as the decedent's surviving spouse. *Id.* She also asked the court to deduct from the spouse's share of the estate "the value of all assets not accounted for which were in his possession." *Id.* Both sides then moved for summary judgment on the issue of the homestead status of the property. *Id.* The trial court granted summary judgment in the adult daughter's favor, finding that the surviving spouse's homestead did not consist of the entire tract of land, but only a portion of the land. *Id.* The surviving spouse appealed, and the adult daughter argued that the trial court's order was interlocutory and not an appealable order. *Id.* The adult daughter emphasized

- 14 -

that the trial court's order was not appealable because it did not address the requests in her counter-petition relating to the other assets held by the surviving spouse. *Id.* The court of appeals disagreed, explaining that the "only dispute at issue at this stage of the probate proceeding was the homestead status of the property." *Id.* at 106. According to the court, although the adult daughter "asserted claims related to other assets, those questions were separate from the homestead issue." *Id.* Because the "trial court's order made a final resolution of the homestead issue as to the entire tract of land," the court held that the order "concluded a discrete phase" of the proceedings, and was final and appealable. *Id.*

The heirs cite *Majeski* for the proposition that a trial court's order with regard to a property's homestead status is an appealable order even though other property issues remain undecided. However, this case is distinguishable from the facts in *Majeski*. In *Majeski*, the surviving spouse filed his application pursuant to section 271 of the Probate Code in an effort to exempt the tract of land as his homestead. *Id.* at 105. He did not also in his section 271 application seek personal property to be exempt. *See id.* Instead, it was the adult daughter who filed a counterclaim asking the court to declare "the value and character of all items of personal property" and what assets should be given to the spouse as the decedent's surviving spouse, and to deduct from the spouse's share of the estate "the value of all assets not accounted for which were in his possession." *Id.* Thus, in *Majeski*, the only dispute at issue with regard to the surviving spouse's section 271 application was the homestead status of the property. *See id.* at 106.

Here, however, Douglas sought to exempt both his homestead *and* personal property pursuant to section 271. Section 271(b) allows a surviving spouse to apply to the probate court "to have *exempt property, including the homestead,* set aside by filing an application." TEX. PROB. CODE ANN. § 271(b) (West Supp. 2012) (emphasis added). Thus, when the probate court ruled on the homestead issue, it decided only part of Douglas's section 271 application to have property set

- 15 -

aside as exempt. For that reason, the probate court called its February 13, 2012, order a "partial" order. As the probate court did not rule on Douglas's entire application pursuant to section 271, its February 13, 2012, order did not conclude a discrete phase of the proceedings and was not appealable. *See De Ayala*, 193 S.W.3d at 578-79. And, as the February 13, 2012, order was not an appealable order, the probate court erroneously concluded that res judicata and collateral estoppel applied to that order. We therefore reverse and vacate the probate court's Order Finding Res Judicata and Collateral Estoppel Apply.

Having determined that res judicata and collateral estoppel do not apply, we must now address Douglas's issues pertaining to homestead. Here, it is apparent the probate court declined Douglas's request to designate the Medina County ranch as the surviving spouse's homestead. Instead, the probate court designated the Ulbrichs' San Antonio residence as the surviving spouse's homestead. On appeal, Douglas argues that the probate court erred in failing to designate his Medina County ranch as his homestead. He further argues that there is no evidence to support the probate court's finding that his San Antonio home was his homestead. We review a trial court's finding of fact for legal and factual sufficiency. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Estate of Cantu*, No. 04-11-00229-CV, 2012 WL 2336248, at *1 (Tex. App.—San Antonio June 20, 2012, no pet.). Here, although there were numerous discussions and arguments regarding the homestead issue at the hearings that took place prior to the August hearing, the record fails to show there was ever any sworn testimony or documentary evidence presented on the homestead issue. And, at the August hearing, the only evidence presented was the testimony of Douglas and one of the decedent's adult children regarding personal property owned by the Ulbrichs. Thus, there was no evidence presented at any hearing in this case on the issue of homestead. And, because there was no evidence presented on the issue of homestead, there is no evidence to support the probate court's finding that the San Antonio home should be set aside

as Douglas's homestead.[2] We therefore reverse the probate court's order to the extent that it designates and sets aside the San Antonio home as Douglas's homestead, and remand the cause for the probate court to rule on Douglas's section 271 application regarding homestead.

Douglas also complains of the probate court's order to the extent that it awards personal property as exempt. He states that he "claims a lot of exempt personal property, much of it associated with his farm and ranch homestead." He "submits that there should be no need to spend much time and money inventorying and appraising the personal property in this case because *most of it* is exempt and should be set aside for his use and benefit." (emphasis added). However, Douglas never specifies *which* personal property should have been set aside as exempt by the probate court or *why* the probate court erred in failing to set it aside. Therefore, Douglas has improperly briefed the issue and waived any complaint with respect to the probate court's failure to set aside certain personal property as exempt pursuant to section 271. *See* TEX. R. APP. P. 38.1(i).

## CONCLUSION

Because the February 13, 2012, order was not an appealable order, we reverse and vacate the probate court's Order Finding Res Judicata and Collateral Estoppel Apply. And, because there was no evidence to support the probate court's finding that the San Antonio residence should be

---

[2] Although the attorneys and the probate court discussed the case at the February 3, 2012, hearing, such discussions are not evidence in this case. *See generally Banda v. Garcia*, 955 S.W.2d 270 (Tex. 1997). Both parties in their briefs also cite to affidavits attached to pleadings filed in this case in support of their factual assertions. However, these affidavits were not introduced as evidence at trial. Finally, in support of factual assertions made in his brief, Douglas cites to a formal bill of exceptions he filed on September 24, 2012, which was after the final hearing on August 10, 2012. *See* TEX. R. APP. P. 33.2. In his formal bill of exceptions, he claimed that the probate court prevented him from entering additional evidence into the record "at the hearing on August 22, 2012, when the court denied his request to testify and offer documentary evidence on his motion to reconsider the court's order dated August 10, 2012, awarding certain exempt property." That is, Douglas did not argue that he was prevented from submitting evidence *at trial*. Instead, in his formal bill of exceptions he argued that the probate court "prevented him from offering relevant evidence in support of his motion to reconsider the Order dated August 10, 2012." Thus, in support of the factual assertions made in his brief, Douglas improperly cites to the documents, photographs, and video attached to his formal bill of exceptions. The primary purpose of a bill of exception is to include excluded evidence in the record so that an appellate court can determine whether the trial court *erred in excluding it. See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Douglas makes no complaint in his brief that the probate court erred in excluding any particular evidence. Thus, the formal bill of exceptions is not relevant to any issue brought by Douglas in this appeal.

set aside as Douglas's homestead, we reverse the probate court's Order Awarding Exempt Property to the extent it sets aside the Ulbrichs' San Antonio residence as Douglas's homestead and remand the cause for further proceedings consistent with this opinion. We affirm the probate court's Order Awarding Exempt Property to the extent that it awards exempt personal property to Douglas and other personal property to the heirs.

Karen Angelini, Justice



# Fourth Court of Appeals
## San Antonio, Texas

## JUDGMENT

No. 04-12-00514-CV

**IN THE ESTATE OF** Consuella Perkins **ULBRICH**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2011-PC-0686
Honorable Tom Rickhoff, Judge Presiding

BEFORE CHIEF JUSTICE STONE, JUSTICE ANGELINI, AND JUSTICE MARTINEZ

In accordance with this court's opinion of this date, the probate court's Order Awarding Exempt Property is REVERSED to the extent it finds and sets aside the house located at 3939 Starhill, San Antonio, Texas as the surviving spouse homestead. The probate court's Order Awarding Exempt Property is AFFIRMED to the extent that it awards exempt personal property to Douglas J. Ulbrich and other personal property to the heirs, Robert Hope, Darlene Wilson, and Debra Byrd. This cause is REMANDED for the probate court to rule on Appellant Douglas J. Ulbrich's section 271 application with regard to homestead.

Further, the probate court's Order Finding Res Judicata and Collateral Estoppel Apply is REVERSED AND VACATED. Costs of appeal are taxed against the party incurring same.

SIGNED September 18, 2013.

Karen Angelini, Justice

# APPELLEES APPENDIX

# EXHIBIT 2

NO. 2011-PC-0686

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| CONSUELLA PERKINS ULBRICH | § | NO. 2 |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## AFFIDAVIT FOR ADMISSION OF BUSINESS RECORDS

Before me, the undersigned authority, personally appeared **Barbara Marie Adan**, who, being by me duly sworn, deposed as follows:

My name is **Barbara Marie Adan**, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

I am the custodian of the records of **Bexar Appraisal District**. Attached hereto are **15** pages of records from **Bexar Appraisal District**. These said **15** pages of records are kept by **Bexar Appraisal District** in the regular course of business and it was the regular course of business of **Bexar Appraisal District** for an employee or representative of **Bexar Appraisal District**, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

_Barbara M. Adan_
Affiant

SWORN TO AND SUBSCRIBED before me on the ___30th___ day of ___July___, 2012.

SARAH YANEZ
Notary Public, State of Texas
My Commission Expires
October 02, 2015

_Sarah Y._
Notary Public, State of Texas

Notary's printed name:

___Sarah Yanez___

My commission expires:

___October 2, 2015___

Bexar County Appraisal District

411 North Frio

San Antonio, Texas 78207

7 April 2011

As of 6 April 2011, I, Douglas J. Ulbrich, wish to have my homestead exemption changed

**From**: Bexar County, 3939 Starhill Drive, San Antonio, Texas 78218

**To**: Medina County,5740 FM 462 Hondo, Texas 78861.

Thank you in advance for expediting this transfer.

Sincerely,

*Douglas J. Ulbrich*

Douglas J. Ulbrich

Median Co Fax # 830-426-4660

Attn: Wendy

RECEIVED

APR 0 8 2011

CI - BCAD

V02142P7324

PROPERTY  532405        R

Legal Description
NCB 13675  BLK   2 LOT 8

OWNER ID        ULBRICH DOUGLAS J &
412248          CONSUELLA
                5740 FM 462 N
OWNERSHIP       HONDO, TX  78861-6921  US
100.00%

| Entitles | |
|---|---|
| 06 | 10C |
| 08 | 10C |
| 09 | 10C |
| 10 | 10C |
| 11 | 10C |
| 21 | 10C |
| 55 | 10C |

13675-002-0080

ACRES:  .0000
EFF. ACRES:

SITUS  3939 STARHILL

APPR VAL METHOD:  Cost

### GENERAL

| UTILITIES | | LAST APPR. | 221-XXX |
|---|---|---|---|
| TOPOGRAPHY | | LAST APPR. YR | 1996 |
| ROAD ACCESS | | LAST INSP. DATE | 01/11/1996 |
| ZONING | R5 | NEXT INSP. DATE | |
| NEXT REASON | | | |

SKETCH for Improvement #1 (Residential)



REMARKS        2009 REVAL; MADE ADJUSTMENTS TO
               CONDITION AND EFFECTIVE AGE WHERE
               NEEDED IN ORDER TO BRING IN LINE WITH
               NBHD 376/CAV

### BUILDING PERMITS
ISSUE DT   PERMIT TYPE    PERMIT AREA  ST  PERMIT VAL

SALE DT    PRICE    GRANTOR         DEED INFO

SUBD: S13675      100.00%   NBHD:98605      100.00%     IMPROVEMENT INFORMATION



| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1966 | 1983 | A | 58,289 | | 88% | 100% | 100% | 100% | | 58,289 |
| | AG | conv seg G | R | A/SB | 377.0 | | | 1966 | 1983 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | conv seg P | R | A/SB | 116.0 | | | 1966 | 1983 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | conv seg TY2 | R | A/SB | 375.0 | | | 1966 | 1983 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 56,000 | (Flat Values) | | | | | | 58,289 |

SUBD: S13675     100.00%   NBHD:98605     100.00%            LAND INFORMATION    IRR Wells: 0    Capacity: 0       IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | | A1 | Y (100%) | | 0.2011 AC | 125.00 | | | | F | 9,600 | NO |
| | | | | | | | | | | | | | 9,600 | |

Effective Date of Appraisal  January 1     Date Printed  07/20/2012  01 20 37PM      by badan

Bexar Appraisal District
PROPERTY 532405    R
Legal Description
NCB 13675 BLK  2 LOT 8

13675-002-0080

SITUS 3939 STARHILL

### GENERAL

UTILITIES
TOPOGRAPHY
ROAD ACCESS
ZONING    R5
NEXT REASON

LAST APPR.      221-XXX
LAST APPR. YR   1996
LAST INSP. DATE 01/11/1996
NEXT INSP. DATE

REMARKS    2009 REVAL: MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

### BUILDING PERMITS
ISSUE DT   PERMIT TYPE   PERMIT AREA   ST   PERMIT VAL

SALE DT    PRICE    GRANTOR         DEED INFO

OWNER ID
412248

OWNERSHIP
100.00%

**PROPERTY APPRAISAL INFORMATION 1999**
ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX  78861-6921  US

| Entities | |
|---|---|
| 06 | 10 |
| 08 | 10 |
| 09 | 10 |
| 10 | 10 |
| 11 | 10 |
| 21 | 10 |
| 55 | 10 |

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Cost

SKETCH for Improvement #1 (Residential)

SUBD: S13675    100.00%   NBHD:98605    100.00%

### IMPROVEMENT INFORMATION

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1966 | 1983 | A | 58,289 | | 88% | 100% | 100% | 100% | | 58,289 |
| | AG | conv seg G | R | A/SB | 377.0 | | | 1966 | 1983 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | conv seg P | R | A/SB | 116.0 | | | 1966 | 1983 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | conv seg TY2 | R | A/SB | 375.0 | | | 1966 | 1983 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 56,000 | (Flat Values) | | | | | | 58,289 |

SUBD: S13675    100.00%   NBHD:98605    100.00%

### LAND INFORMATION    IRR Wells: 0    Capacity: 0    IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | | A1 | Y (100%) | | 0.2011 AC | 125.00 | | | | F | 9,800 | NO |
| | | | | | | | | | | | | | 9,800 | |

Effective Date of Appraisal. January 1     Date Printed  07/20/2012  01.20.43PM     by badan

Bexar Appraisal District
PROPERTY 532405          R
Legal Description
NCB 13675 BLK   2 LOT 8

OWNER ID          PROPERTY APPRAISAL INFORMATION 2000          Entities
412248            ULBRICH DOUGLAS J &                           06
                  CONSUELLA                                     08
OWNERSHIP         5740 FM 462 N                                 09      1
100.00%           HONDO, TX  78861-6921  US                     10      1
                                                                11      1
13675-002-0080                                                  21      1
                                                                55      1
                  ACRES:  .0000
                  EFF. ACRES:
SITUS  3939 STARHILL
                                     APPR VAL METHOD:  Cost
              GENERAL
UTILITIES          LAST APPR.      205-XXX        SKETCH for Improvement #1 (Residential)
TOPOGRAPHY         LAST APPR. YR   2000
ROAD ACCESS        LAST INSP. DATE 03/17/2000
ZONING      R5     NEXT INSP. DATE
NEXT REASON

REMARKS     2009 REVAL; MADE ADJUSTMENTS TO
            CONDITION AND EFFECTIVE AGE WHERE
            NEEDED IN ORDER TO BRING IN LINE WITH
            NBHD 376/CAV

            BUILDING PERMITS
ISSUE DT   PERMIT TYPE   PERMIT AREA  ST  PERMIT VAL

SALE DT   PRICE   GRANTOR        DEED INFO

SUBD: S13675    100.00%  NBHD:98605    100.00%    IMPROVEMENT INFORMATION

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|------|-------------|------|-------------|------|-----------|-------|-------|--------|------|-------|------|------|------|------|------|-----|-----------|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1968 | 1979 | A | 64,200 | | 78% | 100% | 100% | 100% | | 64,200 |
| | AG | conv seg G | R | A/SB | 377.0 | | | 1968 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | conv seg P | R | A/SB | 116.0 | | | 1968 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | conv seg TY2 | R | A/SB | 375.0 | | | 1968 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcde: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 60,700 | (Flat Values) | | | | | | 64,200 |

SUBD: S13675    100.00%  NBHD:98605    100.00%    LAND INFORMATION     IRR Wells: 0   Capacity: 0     IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|----|-------------|-----|-------|----|----|----|------------|-----------|-------------|-----|----------|---------|---------|----------|
| 1 | R/1 Family not Farm | | | A1 | Y (100%) | | 0.2011 AC | 125.00 | | | | F | 9,200 | NO |
| | | | | | | | | | | | | | 9,200 | |

Effective Date of Appraisal  January 1    Date Printed  07/20/2012  01:20:48PM    by badan

43

PROPERTY 532405     R
Legal Description
NCB 13675 BLK  2 LOT 8

13675-002-0080

SITUS  3939 STARHILL

**GENERAL**

UTILITIES
TOPOGRAPHY
ROAD ACCESS
ZONING        R5
NEXT REASON

LAST APPR.          248-LCH
LAST APPR. YR       2001
LAST INSP. DATE     03/01/2001
NEXT INSP. DATE

REMARKS     2009 REVAL: MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**BUILDING PERMITS**

ISSUE DT   PERMIT TYPE    PERMIT AREA   ST   PERMIT VAL

**SALE DT**   PRICE    GRANTOR        DEED INFO

OWNER ID     PROPERTY APPRAISAL INFORMATION 2001
412248       ULBRICH DOUGLAS J &
             CONSUELLA
OWNERSHIP    5740 FM 462 N
100.00%      HONDO, TX 78861-6921  US

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Cost

SKETCH for Improvement #1 (Residential)

| Entities | |
|---|---|
| 06 | 1( |
| 08 | 1( |
| 09 | 1( |
| 10 | 1( |
| 11 | 1( |
| 21 | 1( |
| 55 | 1( |



SUBD: S13675     100.00%  NBHD:98605     100.00%     IMPROVEMENT INFORMATION

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1966 | 1979 | A | 67,000 | | 77% | 100% | 100% | 100% | | 67,000 |
| | AG | conv seg G | R | A/SB | 377.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | conv seg P | R | A/SB | 116.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | conv seg TY2 | R | A/SB | 375.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 66,600 | (Flat Values) | | | | | | 67,000 |

SUBD: S13675     100.00%  NBHD:98605     100.00%

LAND INFORMATION     IRR Wells: 0    Capacity: 0        IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | | A1 | Y (100%) | | 0.2011 AC | 125 00 | | | | F | 9,200 | NO |
| | | | | | | | | | | | | | 9,200 | |

PROPERTY  532405  R
Legal Description
NCB 13675  BLK  2 LOT 8

OWNER ID
412248

OWNERSHIP
100.00%

**PROPERTY APPRAISAL INFORMATION 2002**

ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX 78861-6921  US

| Entities | |
|---|---|
| 06 | |
| 08 | 1 |
| 09 | 1 |
| 10 | 1 |
| 11 | 1 |
| 21 | 1 |
| 55 | 1 |

13675-002-0080

SITUS  3939 STARHILL

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Cost

**GENERAL**

| | | |
|---|---|---|
| UTILITIES | | |
| TOPOGRAPHY | LAST APPR. | 248-LCH |
| ROAD ACCESS | LAST APPR. YR | 2001 |
| ZONING | R5 | LAST INSP. DATE | 03/01/2001 |
| NEXT REASON | | NEXT INSP. DATE | |

REMARKS  2009 REVAL: MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**SKETCH for Improvement #1 (Residential)**

**BUILDING PERMITS**

ISSUE DT   PERMIT TYPE   PERMIT AREA  ST   PERMIT VAL

SALE DT   PRICE   GRANTOR   DEED INFO

SUBD: S13675   100.00%   NBHD:98605   100.00%

**IMPROVEMENT INFORMATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1966 | 1979 | A | 67,000 | | 77% | 100% | 100% | 100% | | 67,000 |
| | AG | conv seg G | R | A/SB | 377.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | conv seg P | R | A/SB | 116.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | conv seg TY2 | R | A/SB | 375.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | | Homesite: Y (100%) | | | 66,600 | | (Flat Values) | | | | | 67,000 |

SUBD: S13675   100.00%   NBHD:98605   100.00%

**LAND INFORMATION**

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | IRR Wells: 0 | Capacity: 0 | IRR Acres: 0 | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | | A1 | Y (100%) | | 0.2011 AC | 125.00 | | | | F | | | | 9,200 | NO |
| | | | | | | | | | | | | | | | | 9,200 | |

Effective Date of Appraisal  January 1    Date Printed  07/20/2012  01:20:50PM    by badan

Bexar Appraisal District
PROPERTY 532405　　　　R
Legal Description
NCB 13675 BLK 2 LOT 8

OWNER ID　412248

OWNERSHIP 100.00%

PROPERTY APPRAISAL INFORMATION 2003
ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX 78861-6921 US

Entities
06　1
08　1
09　1
10　1
11　1
21　1
55　1

13675-002-0080

SITUS 3939 STARHILL

ACRES: .0000
EFF. ACRES:

APPR VAL METHOD: Cost

**GENERAL**

| UTILITIES | | |
|---|---|---|
| TOPOGRAPHY | LAST APPR. | 248-LCH |
| ROAD ACCESS | LAST APPR. YR | 2001 |
| ZONING | R5 | LAST INSP. DATE | 03/01/2001 |
| NEXT REASON | | NEXT INSP. DATE |

SKETCH for Improvement #1 (Residential)

REMARKS　　2009 REVAL; MADE ADJUSTMENTS TO CONDITION AND EFFECTIVE AGE WHERE NEEDED IN ORDER TO BRING IN LINE WITH NBHD 376/CAV

**BUILDING PERMITS**

ISSUE DT　PERMIT TYPE　PERMIT AREA　ST　PERMIT VAL

SALE DT　PRICE　GRANTOR　　DEED INFO

SUBD: S13675　100.00%　NBHD:98605　100.00%

**IMPROVEMENT INFORMATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1966 | 1979 | A | 62,900 | | 74% | 100% | 100% | 100% | | 62,900 |
| | AG | conv seg G | ADD | A/SB | 377.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | conv seg P | ADD | A/NO | 116.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | conv seg TY2 | R | A/SB | 375.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 66,600 | | | | (Flat Values) | | | 62,900 |

SUBD: S13675　100.00%　NBHD:98605　100.00%

**LAND INFORMATION**　IRR Wells: 0.　Capacity: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | | A1 | Y (100%) | | 0.2011 AC | 125.00 | | | | F | 9,200 | NO |

IRR Acres: 0

9,200

Effective Date of Appraisal January 1　　Date Printed: 07/20/2012 01:21:04PM　by badan

46

V02142P1331

Bexar Appraisal District
PROPERTY 532405          R
Legal Description
NCB 13675 BLK 2 LOT 8

OWNER ID
412248

OWNERSHIP
100.00%

PROPERTY APPRAISAL INFORMATION 2004
ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX 78861-6921 US

| Entities | |
|---|---|
| 06 | |
| 08 | 1 |
| 09 | 1 |
| 10 | 1 |
| 11 | 1 |
| 21 | 1 |
| 55 | 1 |

13675-002-0080

ACRES: .0000
EFF. ACRES:

SITUS 3939 STARHILL

APPR VAL METHOD: Cost

**GENERAL**

| | |
|---|---|
| UTILITIES | |
| TOPOGRAPHY | LAST APPR. 248-LCH |
| ROAD ACCESS | LAST APPR. YR 2001 |
| ZONING R5 | LAST INSP. DATE 03/01/2001 |
| NEXT REASON | NEXT INSP. DATE |

SKETCH for Improvement #1 (Residential)

REMARKS    2009 REVAL: MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**BUILDING PERMITS**

ISSUE DT   PERMIT TYPE   PERMIT AREA   ST   PERMIT VAL

SALE DT   PRICE   GRANTOR   DEED INFO

SUBD: S13675   100.00%   NBHD:98605   100.00%

**IMPROVEMENT INFORMATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | | | 1966 | 1979 | A | 62,900 | | 74% | 100% | 100% | 100% | | 62,900 |
| | AG | Attached Gar | ADD | A/SB | 377.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | OP | Attached Ope | ADD | A/NO | 116.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| | PAC | Terrace with | R | A/SB | 375.0 | | | 1966 | 1979 | A | | | 100% | 100% | 100% | 100% | | 0 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | | Homesite: Y (100%) | | | 66,600 | (Flat Values) | | | | | | 62,900 |

SUBD: S13675   100.00%   NBHD:98605   100.00%

**LAND INFORMATION**   IRR Wells: 0   Capacity: 0   IRR Acres: 0

| L# DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQ | 8,760.0000 SQ | 125.00 | | | | F | 9,200 | NO |
| Comment: land val set from pv | | | | | | | | | | | | 9,200 | |

PROPERTY 532405     R
Legal Description
NCB 13675 BLK  2 LOT 8

13675-002-0080

SITUS  3939 STARHILL

### GENERAL

UTILITIES
TOPOGRAPHY
ROAD ACCESS
ZONING     R5
NEXT REASON

LAST APPR.        248-LCH
LAST APPR. YR     2005
LAST INSP. DATE   03/01/2001
NEXT INSP. DATE

REMARKS   2009 REVAL; MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

### BUILDING PERMITS

ISSUE DT   PERMIT TYPE   PERMIT AREA   ST   PERMIT VAL

SALE DT    PRICE    GRANTOR         DEED INFO

PROPERTY APPRAISAL INFORMATION 2005

OWNER ID    ULBRICH DOUGLAS J &
412248      CONSUELLA
            5740 FM 462 N
OWNERSHIP   HONDO, TX 78861-6921 US
100.00%

Entities
06
08
09
10
11
21      1
55      1
CAD     1

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Distributed

SKETCH for Improvement #1 (Residential)



### IMPROVEMENT INFORMATION

SUBD: 813675     100.00%   NBHD:98605   100.00%

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|------|-------------|------|-------------|------|-----------|-------|-------|--------|-------|-------|------|------|------|------|------|-----|-----------|
| | LA | Living Area | R1 | A/SB | 1,408.0 | 53.64 | | 1966 | 1979 | A | 62,900 | 74% | 100% | 100% | 100% | 100% | 0.74 | 62,900 |
| | AG | Attached Gar | ADD | A/SB | 377.0 | 19.77 | | 1966 | 1979 | A | | 74% | 100% | 100% | 100% | 100% | 0.74 | 62,900 |
| | OP | Attached Ope | ADD | A/NO | 116.0 | 12.75 | | 1966 | 1979 | A | | 74% | 100% | 100% | 100% | 100% | 0.74 | 0 |
| | PAC | Terrace with | ADD | A/SB | 375.0 | 11.66 | | 1966 | 1979 | A | | 74% | 100% | 100% | 100% | 100% | 0.74 | 0 |
| 1. | Bldcde: DO | | STCD: A1 | | 2,276.0 | | | | | | | 74% | 100% | 100% | 100% | 100% | 0.74 | 0 |

Homesite: Y (100%)     62,900 (Flat Values)     62,900

### LAND INFORMATION

SUBD: S13675   100.00%   NBHD:98605   100.00%

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|----|-------------|-----|-------|-----|-----|------|-----------|-----------|-------------|-----|----------|---------|---------|----------|
| 1. | R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQ | 8,760.0000 SQ | 1.06 | 9,290 | 1.00 | 1.00 | F | 9,200 | NO |

Comment: land val set from pv

IRR Wells: 0   Capacity: 0   IRR Acres: 0

9,200

Page 1 of 1

Effective Date of Appraisal: January 1     Date Printed: 07/20/2012  01:21.15PM     by badan

V0214 2P1332

PROPERTY 532405      R

Legal Description
NCB 13675 BLK 2 LOT 8

13675-002-0080

SITUS 3939 STARHILL

**GENERAL**

| | | |
|---|---|---|
| UTILITIES | LAST APPR. | 248-LCH |
| TOPOGRAPHY | LAST APPR. YR | 2006 |
| ROAD ACCESS | LAST INSP. DATE | 03/01/2001 |
| ZONING   R5 | NEXT INSP. DATE | |
| NEXT REASON | | |

REMARKS    2009 REVAL: MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**BUILDING PERMITS**

| ISSUE DT | PERMIT TYPE | PERMIT AREA | ST | PERMIT VAL |
|---|---|---|---|---|

| SALE DT | PRICE | GRANTOR | DEED INFO |
|---|---|---|---|

OWNER ID
412248

ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX 78861-6921 US

OWNERSHIP
100.00%

PROPERTY APPRAISAL INFORMATION 2006

| Entities | |
|---|---|
| 06 | 10 |
| 08 | 10 |
| 09 | 10 |
| 10 | 10 |
| 11 | 10 |
| 21 | 10 |
| 55 | 10 |
| CAD | 10 |

ACRES: .0000
EFF. ACRES:

APPR VAL METHOD: Cost

SKETCH for Improvement #1 (Residential)



**IMPROVEMENT INFORMATION**

SUBD: S13675   100.00%   NBHD:98605   111.00%

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | 59.04 | | 1966 | 1979 | A | 83,130 | 69% | 100% | 100% | 100% | 100% | 0.69 | 57,380 |
| | AG | Attached Gar | ADD | A/SB | 377.0 | 22.14 | | 1966 | 1979 | A | 8,350 | 69% | 100% | 100% | 100% | 100% | 0.69 | 5,760 |
| | OP | Attached Ope | ADD | A/NO | 116.0 | 12.76 | | 1966 | 1979 | A | 1,480 | 69% | 100% | 100% | 100% | 100% | 0.69 | 1,020 |
| | PAC | Terrace with | ADD | A/SB | 375.0 | 11.68 | | 1966 | 1979 | A | 4,370 | 69% | 100% | 100% | 100% | 100% | 0.69 | 3,020 |
| 1. | Blccde: DO | | STCD: A1 | | 2,276.0 | Homesite: Y (100%) | | | | | 97,330 | | | | | | | 67,160 |

**LAND INFORMATION**    IRR Wells: 0   Capacity: 0    IRR Acres: 0

SUBD: S13675   100.00%   NBHD:98605   100.00%

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQMTX | 0.2011 AC | 1.06 | 9,290 | 1.00 | 1.00 | A | 9,290 | NO |
| | Comment land val set from pv | | | | | | | | | | | | 9,290 | |

PROPERTY 532405         R
Legal Description
NCB 13675  BLK   2 LOT 8

13675-002-0080

SITUS  3939 STARHILL

**GENERAL**

| UTILITIES | | |
| TOPOGRAPHY | LAST APPR. | 248-LCH |
| ROAD ACCESS | LAST APPR. YR | 2007 |
| ZONING | R5 | LAST INSP. DATE | 03/01/2001 |
| NEXT REASON | | NEXT INSP. DATE |

REMARKS   2009 REVAL; MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**BUILDING PERMITS**

ISSUE DT   PERMIT TYPE   PERMIT AREA  ST  PERMIT VAL

SALE DT   PRICE   GRANTOR         DEED INFO

PROPERTY APPRAISAL INFORMATION 2007

OWNER ID
412248

OWNERSHIP
100.00%

ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX  78861-6921  US

| Entities | |
| 06 | 10 |
| 08 | 10 |
| 09 | 10 |
| 10 | 10 |
| 11 | 10 |
| 21 | 10 |
| 55 | 10 |
| CAD | 10 |

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Cost

**SKETCH for Improvement #1 (Residential)**

SUBD: 813675       100.00%  NBHD:98605      129.00%

**IMPROVEMENT INFORMATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|------|-------------|------|-------------|------|-----------|-------|-------|--------|------|-------|------|------|------|------|------|-----|-----------|
| | LA | Living Area | R1 | A/SB | 1,408.0 | 63.97 | | 1966 | 1979 | A | 90,070 | 67% | 100% | 100% | 100% | 100% | 0.67 | 60,350 |
| | AG | Attached Gar | ADD | A/SB | 377.0 | 22.14 | | 1966 | 1979 | A | 8,350 | 67% | 100% | 100% | 100% | 100% | 0.67 | 5,590 |
| | OP | Attached Ope | ADD | A/NO | 116.0 | 12.75 | | 1966 | 1979 | A | 1,480 | 67% | 100% | 100% | 100% | 100% | 0.67 | 990 |
| | PAC | Terrace with | ADD | A/SB | 375.0 | 11.66 | | 1966 | 1979 | A | 4,370 | 67% | 100% | 100% | 100% | 100% | 0.67 | 2,930 |
| 1. | Bldcde: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 104,270 | | | | | | | 69,860 |

SUBD: 813675       100.00%  NBHD:98605      140.00%

**LAND INFORMATION**         IRR Wells: 0      Capacity: 0         IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPLY |
|----|-------------|-----|-------|-----|-----|------|-----------|-----------|-------------|-----|----------|---------|---------|----------|
| 1. | R/1 Family not Farm | | 98605 | A1 | Y (100%) | SOMTX | 0.2011 AC | 1.06 | 9.290 | 1.00 | 1.40 | A | 13,000 | NO |

Comment: land val set from pv

13,000

Effective Date of Appraisal  January 1       Date Printed   07/20/2012  01:21:27PM       by badan

50

Legal Description
NCB 13675 BLK 2 LOT 8

OWNER ID
412248

OWNERSHIP
100.00%

PROPERTY APPRAISAL INFORMATION 2008
ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX 78861-6921 US

Entities
06 10
08 10
09 10
10 10
11 10
21 10
55 10
CAD 10

13675-002-0080

ACRES: .0000
EFF. ACRES:

SITUS 3939 STARHILL

APPR VAL METHOD: Cost

SKETCH for Improvement #1 (Residential)

### GENERAL

| UTILITIES | | LAST APPR. | 248-LCH |
| TOPOGRAPHY | | LAST APPR. YR | 2008 |
| ROAD ACCESS | | LAST INSP. DATE | 03/01/2001 |
| ZONING | R5 | NEXT INSP. DATE | |
| NEXT REASON | | | |

REMARKS   2009 REVAL; MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV



### BUILDING PERMITS

| ISSUE DT | PERMIT TYPE | PERMIT AREA | ST | PERMIT VAL |
|---|---|---|---|---|

| SALE DT | PRICE | GRANTOR | DEED INFO |
|---|---|---|---|

SUBD: S13675   100.00%   NBHD:98605   100.00%

### IMPROVEMENT INFORMATION

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | LA | Living Area | R1 | A/SB | 1,408.0 | 66.74 | | 1966 | 1980 | A | 93,970 | 67% | 100% | 100% | 100% | 100% | 0.67 | 62,960 |
| | AG | Attached Gar | ADD | A/SB | 377.0 | 22.14 | | 1966 | 1980 | A | 8,350 | 67% | 100% | 100% | 100% | 100% | 0.67 | 5,590 |
| | OP | Attached Ope | ADD | A/NO | 116.0 | 12.75 | | 1966 | 1980 | A | 1,480 | 67% | 100% | 100% | 100% | 100% | 0.67 | 990 |
| | PAC | Terrace with | ADD | A/SB | 375.0 | 11.66 | | 1966 | 1980 | A | 4,370 | 67% | 100% | 100% | 100% | 100% | 0.67 | 2,930 |
| 1. | Bldcde: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 108,170 | | | | | | | 72,470 |

SUBD: S13675   100.00%   NBHD:98605   100.00%

### LAND INFORMATION   IRR Wells: 0   Capacity: 0   IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQMTX | 0.2011 AC | 1.06 | 9,290 | 1.00 | 1.95 | A | 18,110 | NO |

Comment: land val set from pv

18,110

PROPERTY  532405                R

Legal Description
NCB 13675  BLK    2 LOT 8

OWNER ID
412248

OWNERSHIP
100.00%

**PROPERTY APPRAISAL INFORMATION 2009**
ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX 78861-6921  US

Entities
08      1
08      1
09      1
10      1
11      1
21      1
55      1
CAD   1

13675-002-0080

SITUS  3939 STARHILL

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Cost

**GENERAL**

UTILITIES
TOPOGRAPHY
ROAD ACCESS
ZONING          R5
NEXT REASON

LAST APPR.          248-LCH
LAST APPR. YR      2008
LAST INSP. DATE    03/01/2001
NEXT INSP. DATE

SKETCH for Improvement #1 (Residential)



REMARKS        2009 REVAL; MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**BUILDING PERMITS**

ISSUE DT    PERMIT TYPE    PERMIT AREA   ST    PERMIT VAL

SALE DT    PRICE    GRANTOR          DEED INFO



SUBD: S13675      100.00%  NBHD:98605      104.00%          **IMPROVEMENT INFORMATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|------|-------------|------|-------------|------|-----------|-------|-------|--------|------|-------|------|------|------|------|------|-----|-----------|
|   | LA | Living Area | R1 | A/SB | 1,408.0 | 66.74 | | 1966 | 1983 | F | 93,970 | 66% | 100% | 100% | 100% | 100% | 0.66 | 62,020 |
|   | AG | Attached Gar | ADD | A/SB | 377.0 | 22.14 | | 1966 | 1983 | F | 8,350 | 66% | 100% | 100% | 100% | 100% | 0.66 | 5,510 |
|   | OP | Attached Ope | ADD | A/NO | 116.0 | 13.07 | | 1966 | 1983 | F | 1,520 | 66% | 100% | 100% | 100% | 100% | 0.66 | 1,000 |
|   | PAC | Terrace with | ADD | A/SB | 375.0 | 11.66 | | 1966 | 1983 | F | 4,370 | 66% | 100% | 100% | 100% | 100% | 0.66 | 2,890 |
| 1. | Bldcde: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | | 108,210 | | | | | | | 71,420 |

SUBD: S13675      100.00%  NBHD:98605      195.00%          **LAND INFORMATION**   IRR Wells: 0    Capacity: 0      IRR Acres: 0

| # | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPL |
|---|-------------|-----|-------|-----|-----|------|-----------|-----------|-------------|-----|----------|---------|---------|---------|
| 1. | R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQMTX | 0.2011 AC | 1.06 | 9,290 | 1.00 | 1.95 | A | 18,110 | NO |

Comment: land val set from pv

18,110

Effective Date of Appraisal:  January 1      Date Printed  07/20/2012  01.21 39PM      by hadan

Bexar Appraisal District

PROPERTY  532405          R

Legal Description
NCB 13675 BLK   2 LOT 8

OWNER ID
412248

OWNERSHIP
100.00%

**PROPERTY APPRAISAL INFORMATION 2010**

ULBRICH DOUGLAS J &
CONSUELLA
5740 FM 462 N
HONDO, TX  78861-6921  US

Entities
06
08
09
10
11
21
55
CAD

13675-002-0080

SITUS  3939 STARHILL

ACRES:  .0000
EFF. ACRES:

APPR VAL METHOD:  Cost

### GENERAL

UTILITIES
TOPOGRAPHY
ROAD ACCESS
ZONING          R5
NEXT REASON

LAST APPR.          248-LCH
LAST APPR. YR      2009
LAST INSP. DATE   03/01/2001
NEXT INSP. DATE

SKETCH for Improvement #1 (Residential)



REMARKS       2009 REVAL; MADE ADJUSTMENTS TO
              CONDITION AND EFFECTIVE AGE WHERE
              NEEDED IN ORDER TO BRING IN LINE WITH
              NBHD 376/CAV

### BUILDING PERMITS

ISSUE DT    PERMIT TYPE    PERMIT AREA    ST    PERMIT VAL

SALE DT    PRICE    GRANTOR          DEED INFO

SUBD: S13675     100.00%   NBHD: 98605     119.00%

### IMPROVEMENT INFORMATION

| # TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LA | Living Area | R1 | A/SB | 1,408.0 | 66.74 | | 1966 | 1983 | F | 93,970 | 64% | 100% | 100% | 100% | 100% | 0.64 | 60,140 |
| AG | Attached Gar | ADD | A/SB | 377.0 | 22.14 | | 1966 | 1983 | F | 8,350 | 64% | 100% | 100% | 100% | 100% | 0.64 | 5,340 |
| OP | Attached Ope | ADD | A/NO | 116.0 | 13.07 | | 1966 | 1983 | F | 1,520 | 64% | 100% | 100% | 100% | 100% | 0.64 | 970 |
| PAC | Terrace with | ADD | A/SB | 375.0 | 11.66 | | 1966 | 1983 | F | 4,370 | 64% | 100% | 100% | 100% | 100% | 0.64 | 2,800 |
| 1. Bldcde: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 108,210 | | | | | | | 69,250 |

SUBD: S13675     100.00%   NBHD: 98605     195.00%

### LAND INFORMATION

IRR Water: 0     Capacity: 0     IRR Acres: 0

| L# DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQMTX | 0.2011 AC | 1.06 | 9,290 | 1.00 | 1.95 | A | 18,110 | NO |
| Comment: land val set from pv | | | | | | | | | | | | | |

18,110

PROPERTY  532405          R

Legal Description
NCB 13675 BLK  2 LOT 8

OWNER ID
2731786

OWNERSHIP
100.00%

**PROPERTY APPRAISAL INFORMATION 2011**

ULBRICH DOUGLAS J
3939 STARHILL DR
SAN ANTONIO, TX  78218-2436  US

Entities
06        1
08        1
09        1
10        1
11        1
21        1
55        1
CAO       1

13675-002-0080

ACRES:  .0000
EFF. ACRES:

SITUS  3939 STARHILL

APPR VAL METHOD:  Cost

**GENERAL**

| UTILITIES | | |
| TOPOGRAPHY | LAST APPR. | 248-LCH |
| ROAD ACCESS | LAST APPR. YR | 2011 |
| ZONING | R5 | LAST INSP. DATE | 03/01/2001 |
| NEXT REASON | | NEXT INSP. DATE |

REMARKS    2009 REVAL; MADE ADJUSTMENTS TO
CONDITION AND EFFECTIVE AGE WHERE
NEEDED IN ORDER TO BRING IN LINE WITH
NBHD 376/CAV

**SKETCH for Improvement #1 (Residential)**



**BUILDING PERMITS**

ISSUE DT    PERMIT TYPE    PERMIT AREA    ST    PERMIT VAL

SALE DT    PRICE    GRANTOR        DEED INFO

SUBD: S13675        100.00%   NBHD:98605      119.00%          **IMPROVEMENT INFORMATION**

| # | TYPE | DESCRIPTION | MTHD | CLASS/SUBCL | AREA | UNIT PRICE | UNITS | BUILT | EFF YR | COND. | VALUE | DEPR | PHYS | ECON | FUNC | COMP | ADJ | ADJ VALUE |
|---|------|-------------|------|-------------|------|------------|-------|-------|--------|-------|-------|------|------|------|------|------|-----|-----------|
| | LA | Living Area | R1 | A/SB | 1,406.0 | 66.74 | | 1966 | 1983 | F | 93,970 | 62% | 100% | 100% | 100% | 100% | 0.62 | 58,260 |
| | AG | Attached Gar | ADD | A/SB | 377.0 | 22.14 | | 1966 | 1983 | F | 8,350 | 62% | 100% | 100% | 100% | 100% | 0.62 | 5,180 |
| | OP | Attached Ope | ADD | A/NO | 116.0 | 13.07 | | 1966 | 1983 | F | 1,520 | 62% | 100% | 100% | 100% | 100% | 0.62 | 940 |
| | PAC | Terrace with | ADD | A/SB | 375.0 | 11.66 | | 1966 | 1983 | F | 4,370 | 62% | 100% | 100% | 100% | 100% | 0.62 | 2,710 |
| 1. | Bldcode: DO | | STCD: A1 | | 2,276.0 | | Homesite: Y (100%) | | | | 108,210 | | | | | | | 67,090 |

SUBD: S13675        100.00%   NBHD:98605      195.00%          **LAND INFORMATION**     IRR Wells: 0    Capacity: 0       IRR Acres: 0

| L# | DESCRIPTION | CLS | TABLE | SC | HS | METH | DIMENSIONS | UNIT PRICE | GROSS VALUE | ADJ | MASS ADJ | VAL SRC | MKT VAL | AG APPL |
|----|-------------|-----|-------|-----|-----|------|------------|------------|-------------|-----|----------|---------|---------|---------|
| 1. | R/1 Family not Farm | | 98605 | A1 | Y (100%) | SQMTX | 0.2011 AC | 1.06 | 9,290 | 1.00 | 1.95 | A | 18,110 | NO |
| | Comment: land val set from pv | | | | | | | | | | | | 18,110 | |

Effective Date of Appraisal:  January 1        Date Printed   07/20/2012  01:21:56PM      by badan

# APPELLEES APPENDIX

# EXHIBIT 3

## Bexar CAD

## Property Search Results > 532405 ULBRICH DOUGLAS J for Year 2011

### Property

#### Account

Property ID: 532405
Geographic ID: 13675-002-0080
Type: Real
Property Use Code: 001
Property Use Description: Single Family

Legal Description: NCB 13675 BLK 2 LOT 8
Agent Code:

#### Location

Address: 3939 STARHILL
SAN ANTONIO, TX 78218
Neighborhood: FAIRFIELD/VILL N -SOUTH
Neighborhood CD: 98605

Mapsco: 552C8
Map ID:

#### Owner

Name: ULBRICH DOUGLAS J
Mailing Address: 3939 STARHILL DR
SAN ANTONIO, TX 78218-2436

Owner ID: 2731786
% Ownership: 100.0000000000%
Exemptions: HS, OV65

### Values

| | | | |
|---|---|---|---|
| (+) Improvement Homesite Value: | + | $79,840 | |
| (+) Improvement Non-Homesite Value: | + | $0 | |
| (+) Land Homesite Value: | + | $18,110 | |
| (+) Land Non-Homesite Value: | + | $0 | Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | $0 | $0 |
| (+) Timber Market Valuation: | + | $0 | $0 |
| (=) Market Value: | = | $97,950 | |
| (−) Ag or Timber Use Value Reduction: | − | $0 | |
| (=) Appraised Value: | = | $97,950 | |
| (−) HS Cap: | − | $0 | |
| (=) Assessed Value: | = | $97,950 | |

### Taxing Jurisdiction

Owner: ULBRICH DOUGLAS J
% Ownership: 100.0000000000%
Total Value: $97,950

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 06 | BEXAR CO RD & FLOOD | 0.030679 | $97,950 | $94,950 | $29.13 |
| 08 | SA RIVER AUTH | 0.017370 | $97,950 | $87,950 | $15.28 |
| 09 | ALAMO COM COLLEGE | 0.141623 | $97,950 | $67,950 | $96.24 |
| 10 | UNIV HEALTH SYSTEM | 0.276235 | $97,950 | $97,950 | $270.57 |
| 11 | BEXAR COUNTY | 0.296187 | $97,950 | $47,950 | $142.03 |
| 21 | CITY OF SAN ANTONIO | 0.565690 | $97,950 | $32,950 | $186.40 |
| 55 | NORTH EAST ISD | 1.402900 | $97,950 | $59,620 | $836.41 |
| CAD | BEXAR APPRAISAL DISTRICT | 0.000000 | $97,950 | $97,950 | $0.00 |

V02142P7340

| | | | | | | |
|---|---|---|---|---|---|---|
| Total Tax Rate: | 2.730684 | | | | | |

| | |
|---|---|
| Taxes w/Current Exemptions: | $1,576.06 |
| Taxes w/o Exemptions: | $2,674.70 |

## Improvement / Building

Improvement #1: Residential   State Code: A1   Living Area: 1408.0 sqft   Value: $79,840

| Type | Description | Class CD | Exterior Wall | Year Built | SQFT |
|---|---|---|---|---|---|
| LA | Living Area | A | SB | 1966 | 1408.0 |
| AG | Attached Garage | A | | 1966 | 377.0 |
| OP | Attached Open Porch | A | | 1966 | 116.0 |
| PAC | Terrace with cover | A | | 1966 | 375.0 |

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|---|---|---|---|---|---|---|---|
| 1 | RES | R/1 Family not Farm Single | 0.2011 | 8760.00 | 73.00 | 120.00 | $18,110 | $0 |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|---|---|---|---|---|---|---|
| 2015 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2014 | $88,530 | $18,110 | 0 | 106,640 | $0 | $106,640 |
| 2013 | $87,240 | $18,110 | 0 | 105,350 | $0 | $105,350 |
| 2012 | $79,200 | $18,110 | 0 | 97,310 | $0 | $97,310 |
| 2011 | $79,840 | $18,110 | 0 | 97,950 | $0 | $97,950 |
| 2010 | $82,410 | $18,110 | 0 | 100,520 | $0 | $100,520 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|---|---|---|---|---|---|---|---|

2015 data current as of Oct 6 2014 1:51AM.
2014 and prior year data current as of Oct 2 2014 11:06AM
For property information, contact (210) 242-2432 or (210) 224-8511 or email.
For website information, contact (210) 242-2500.

Website version: 1.2.2.2   Database last updated on: 10/6/2014 1:51 AM   © 2014 True Automation, Inc. All Rights Reserved. Privacy Notice

This site only supports Internet Explorer 6+, Netscape 7+ and Firefox 1.5+.

http://www.bcad.org/clientdb/Property.aspx?prop_id=532405

10/11/2014

VO2142P7341

# APPELLEES APPENDIX

# EXHIBIT 4

# Designation of Homestead

**Date:** April 11, 2011

**Affiant/Cliamant:** Douglas J. Ulbrich

**Current Record Title Holder of Property:** Douglas J. Ulbrich

**Property:** 160.00 Acres out of Survey No. 419, Abstract No. 1174, H.E. & W.T. RR Co., original Grantee, Medina County, Texas.

Title to the above described property is vested in Claimant.

Pursuant to section 41.005 of the Texas Property Code, Claimant designates the Property as Claimant and Claimant's family homestead.

_Douglas J. Ulbrich_
Douglas J. Ulbrich

STATE OF TEXAS                  )

COUNTY OF MEDINA                )

This instrument was acknowledged before me on _April 11_, 2011, by Douglas J. Ulbrich.

LAURA BOGERT
MY COMMISSION EXPIRES
September 14, 2011

_Laura J. Bogert_
Notary Public, State of Texas
My commission expires: 9/14/2011

PREPARED IN THE OFFICE OF:
AFTER RECORDING RETURN TO:

Thomas J. Rothe, P.C.
1510 Avenue M, Suite 101
Hondo, Texas 78861
Tel: (830) 741-4141
Fax: (830) 426-4141

Designation of Homestead - Page Solo                    10-77\Douglas\DoH

Partition
Jack - her father
284/61

7-1-78

THE STATE OF TEXAS    X

COUNTY OF MEDINA    X    79896

WHEREAS, the undersigned Grantor and Grantees have and hold in common, a certain 404.58810 acres of land out of Survey No. 419, Abstract No. 1174, H. E. & W. T. RR Co., original Grantee, said 404.58810 acre tract being the residue of a certain 415 acre tract conveyed to J. E. Ulbrich by Willie Schlentz by Deed dated February 15, 1947, recorded in Volume 138, on page 611 of the Deed Records of Medina County, Texas, and is situated about 10 miles North 16° West of Hondo, Medina County, Texas; said 404.58810 acres of land being the same property devised to the undersigned Grantor and Grantees under the Will of Jack E. Ulbrich, Sr., deceased; and

WHEREAS, the Grantor and Grantees herein each own an undivided one-fifth (1/5) interest in and to said tract of land; and

WHEREAS, the Grantor and the Grantees herein desire to make partition of said 404.58810 acre tract of land;

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That I, JACK T. ULBRICH, JR., joined by my wife, MARY ULBRICH, of Medina County, Texas, for and in consideration of the premises, and to effect such partition, have GRANTED, CONVEYED AND CONFIRMED, and by these presents do GRANT, CONVEY AND CONFIRM, unto LAVERNE ULBRICH MAISH, of Dallas County, Texas, SHIRLEY ULBRICH TARRANT, of Bexar County, Texas, DOUGLAS J. ULBRICH, of Bexar County, Texas, and BONNIE ULBRICH GROFF, of Medina County, Texas, all of my undivided right, title and interest in and to the following described tract of land in Medina County, Texas, to-wit:

> 320 acres of land out of Survey No. 419, Abstract No. 1174, H. E. & W. T. RR Co., original Grantee, and being all of that certain 404.58810 acres of land described as follows:

> 404.58810 acres of land, out of Survey No. 419, Abst. 1174, H.E. & W.T. RR Co., original Grantee. Said 404.58810 acre tract being the residue of a certain 415 acre tract conveyed to J. E. Ulbrich from Willie Schlentz by Deed dated Feb. 15, 1947 and recorded in Vol. 138 on Page 611 of the Deed Records of Medina County, Texas, and is situated about 10 miles N 16° W of Hondo, Medina County, Texas; said 404.58810 acres of land being further described by metes and bounds as follows:

> BEGINNING at a 5/8" iron pin by corner post, from which the

61

original SW corner of Survey No. 132, Abst. 1814, H.E. &
W. T. RR Co., Original Grantee, brs. S 73-47-00 E 8.800 ft.
(found original bearing 5" Live Oak now (now 13"), S 18-30-00
E 135.56 ft.);

THENCE with fence, S 20-21-40 E 506.659 ft. to a 3/4" iron pipe
by corner post, for the SE corner of this tract;

THENCE with fence and South line of said Survey No. 419, S 70-
21-57 W 2938.261 ft. to an angle point of fence and S 70-01-25
W 2694.946 ft. to the SW corner of this tract, a 3/4" iron pipe
set in the East R.O.W. line of F.M. Hwy. 462;

THENCE with East R.O.W. line of F.M. Hwy. 462, N 18-29-17 W
533.917 ft. to the beginning of a curve to the right, said curve
having a central angle of 41° 30' 25", a radius of 923.717 ft.
and a length of 669.170 ft. to the end of said curve;

THENCE N 23-01-08 E 1828.373 ft. to the beginning of a curve to
the right, said curve having a central angle of 07° 01' 30", a
radius of 1374.780 ft. and a length of 168.455 ft. to the end
of said curve;

THENCE N. 30-02-38 E 1442.362 ft. to the beginning of a curve
to the right, said curve having a central angle of 51° 58' 58",
a radius of 1201.850 ft. and a length of 1090.403 ft. to the
end of said curve;

THENCE N 82-01-36 E 286.661 ft. to a concrete R.O.W. marker;
N 82-16-12 E 296.548 ft. to an angle point; N 78-07-45 E 201.290
ft. to a concrete R.O.W. marker; N 56-29-51 E 114.000 ft. to
an angle point; N 42-27-05 E 111.500 ft. to a concrete R.O.W.
marker; N 27-21-17 E 132.769 ft. to a concrete R.O.W. marker;
N 18-38-58 E 62.115 ft. to a concrete R.O.W. marker; N 11-50-53
E 229.051 ft. to a concrete R.O.W. marker; N 10-10-37 E 76.808
ft. to a concrete R.O.W. marker; N 02-26-33 E 180.531 ft. to a
concrete R.O.W. marker; N 02-40-08 E 210.154 ft. to a concrete
R.O.W. marker; N 02-30-22 E 402.843 ft. to a concrete R.O.W.
marker; N 05-46-32 E 492.081 ft. to a 3/4" iron pipe; N 01-24-
04 W 115.213 ft. to a 3/4" iron pipe and N. 31-33-42 E 46.509
ft. to a 3/4" iron pipe, the North corner of this tract;

THENCE with fence, S 20-02-47 E 4926.500 ft. to the place of
BEGINNING; as certified to by John H. Poerner, Registered Pub-
lic Surveyor, on the 23rd day of March, 1977;

LESS: That certain 84.588 acres of land out of said Survey No.
419, Abstract No. 1174, H. E. & W. T. RR Co., original Grantee,
this day allotted and conveyed to Jack T. Ulbrich, Jr., said
84.588 acres of land being described as follows, to-wit:

84.588 acres of land situated about 10 miles N 16° W of
Hondo, in Medina County, Texas, out of Survey No. 419, Ab-
stract No. 1174, H. E. & W. T. RR Co., original Grantee, being
the North portion of a certain 404.58810 acre tract of land
surveyed by John Poerner and Associates on March 23, 1977,
said 404.58810 acre tract being the residue of a certain 415
acre tract of land conveyed by Deed to J. E. Ulbrich from Willie
Schlantz, dated February 15, 1947, as recorded in Volume 138
on Page 611 of the Deed Records of Medina County, Texas, and
being more particularly described by metes and bounds, as follows:

BEGINNING at a 3/4" iron pipe set in a curve to the right on

2.

the East R.O.W. line of F.M. Highway 462 for the Northwest corner of this survey from which a 3/4" iron pipe found for the point-of-curvature of said curve to the right bears S 48-50-33 W 774.574 feet;

THENCE with fence, the East R.O.W. line of F.M. Highway 462, and along the arc of said curve to the right having a radius of 1201.85 feet, a delta angle of 14° 23' 08", and a tangent of 151.675 feet, a distance of 301.745 feet to a 3/4" iron pipe for the point-of-tangency of said curve.

THENCE with fence and the East R.O.W. line of F.M. Highway 462 N 82-01-36 E 286.661 feet to a concrete highway marker for an angle point;

THENCE departing fence and continuing along the record East line of F.M. Highway 462 the following courses: N 82-16-12 E 296.548 feet to a 3/4" iron pipe for an angle point; N 78-07-45 E 201.290 feet to a concrete highway marker for an angle point; N 56-29-51 E 114.000 feet to a 3/4" iron pipe for an angle point; N 42-27-05 E 111.500 feet to a concrete highway marker for an angle point; N 27-21-17 E 132.769 feet to a concrete highway marker for an angle point; N 18-38-58 E 62.115 feet to a concrete highway marker for an angle point; N 11-50-53 E 229.051 feet to a concrete highway marker for an angle point; N 10-10-37 E 76.808 feet to a concrete highway marker for an angle point; and, N 02-26-33 E 180.531 feet to a concrete highway marker in fence for an angle point;

THENCE with fence and the East line of F. M. Highway 462 N 02-40-08 E 210.154 feet to a concrete highway marker for an angle point and N 02-30-22 E 402.843 feet to a concrete highway marker for an angle point;

THENCE departing the East line of F. M. Highway 462 and with fence N 05-46-32 E 492.081 feet to a 3/4" iron pipe for an angle point;

THENCE with fence N 01-24-04 W 115.213 feet to a 3/4" iron pipe for an angle point;

THENCE with fence N 31-33-42 E 46.509 feet to a 3/4" iron pipe for the North corner of said 404.58810 acre tract of land and the North corner of this survey;

THENCE with fence and the East line of said 404.58810 acre tract of land S 20-02-47 E 3245.500 feet to a 3/4" iron pipe set in fence for the Southeast corner of this survey;

THENCE S 82-29-24 W 2533.286 feet to a 3/4" iron pipe set for the Southwest corner of this survey;

THENCE N 04-17-18 W 1124.459 feet to the POINT OF BEGINNING; as surveyed on May 18, 1978, by Charles W. Roths, Registered Professional Engineer;

so that henceforth, said Grantees herein shall have and hold in their own right full fee simple title in and to said 320 acre tract above described.

This conveyance also covers all of my right, title and interest in and to all oil, gas and other minerals, including coal, lignite and

63

62 V021 42 P1346

uranium, in, on, to and under said 320 acre tract of land above described.

TO HAVE AND TO HOLD said undivided interest in and to said 320 acre tract above described, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said LAVERNE ULBRICH RAISH, SHIRLEY ULBRICH TARRANT, DOUGLAS J. ULBRICH, and BONNIE ULBRICH GROFF, their heirs and assigns, forever; and I do hereby bind myself, my heirs, executors and administrators to WARRANT AND FOREVER DEFEND, all and singular, said undivided interest in and to said premises unto the said Grantees herein, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under me, but not otherwise.

EXECUTED this 1st day of July, 1978.

_____
JACK T. ULBRICH, JR.

_____
MARY ULBRICH

THE STATE OF TEXAS    X
COUNTY OF MEDINA      X

BEFORE ME, the undersigned authority, on this day personally appeared JACK T. ULBRICH, JR. and MARY ULBRICH, his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 4th day of August, 1978.

_____
Notary Public, Medina County, Texas

FILED FOR RECORD THE 7th DAY OF AUGUST, A. D. 1978 AT 10:35 O'CLOCK A .M.
RECORDED THIS THE 8th DAY OF AUGUST, A. D. 1978 AT 2:00 O'CLOCK P. M.
CORNELIA M. KOCH
CLERK COUNTY COURT, MEDINA COUNTY, TEXAS
BY: _____ DEPUTY

# APPELLEES APPENDIX

# EXHIBIT 5

# Bexar CAD

## Property Search Results > 532405 ULBRICH DOUGLAS J for Year 2012

### Property

#### Account

| | | |
|---|---|---|
| Property ID: | 532405 | Legal Description: NCB 13675 BLK 2 LOT 8 |
| Geographic ID: | 13675-002-0080 | Agent Code: |
| Type: | Real | |
| Property Use Code: | 001 | |
| Property Use Description: | Single Family | |

#### Location

| | | | |
|---|---|---|---|
| Address: | 3939 STARHILL<br>SAN ANTONIO, TX 78218 | Mapsco: | 552C8 |
| Neighborhood: | FAIRFIELD/VILL N -SOUTH | Map ID: | |
| Neighborhood CD: | 98605 | | |

#### Owner

| | | | |
|---|---|---|---|
| Name: | ULBRICH DOUGLAS J | Owner ID: | 2731786 |
| Mailing Address: | 3939 STARHILL DR<br>SAN ANTONIO, TX 78218-2436 | % Ownership: | 100.0000000000% |
| | | Exemptions: | |

### Values

| | | | |
|---|---|---|---|
| (+) Improvement Homesite Value: | + | $79,200 | |
| (+) Improvement Non-Homesite Value: | + | $0 | |
| (+) Land Homesite Value: | + | $18,110 | |
| (+) Land Non-Homesite Value: | + | $0 | Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | $0 | $0 |
| (+) Timber Market Valuation: | + | $0 | $0 |
| (=) Market Value: | = | $97,310 | |
| (–) Ag or Timber Use Value Reduction: | – | $0 | |
| (=) Appraised Value: | = | $97,310 | |
| (–) HS Cap: | – | $0 | |
| (=) Assessed Value: | = | $97,310 | |

### Taxing Jurisdiction

Owner: ULBRICH DOUGLAS J
% Ownership: 100.0000000000%
Total Value: $97,310

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 06 | BEXAR CO RD & FLOOD | 0.030679 | $97,310 | $97,310 | $29.85 |
| 08 | SA RIVER AUTH | 0.017370 | $97,310 | $97,310 | $16.90 |
| 09 | ALAMO COM COLLEGE | 0.149150 | $97,310 | $97,310 | $145.14 |
| 10 | UNIV HEALTH SYSTEM | 0.276235 | $97,310 | $97,310 | $268.81 |
| 11 | BEXAR COUNTY | 0.296187 | $97,310 | $97,310 | $288.22 |
| 21 | CITY OF SAN ANTONIO | 0.565690 | $97,310 | $97,310 | $550.47 |
| 55 | NORTH EAST ISD | 1.425000 | $97,310 | $97,310 | $1,386.66 |
| CAD | BEXAR APPRAISAL DISTRICT | 0.000000 | $97,310 | $97,310 | $0.00 |

V02142P7349

| Total Tax Rate: | 2.760311 | | |
|---|---|---|---|
| | | Taxes w/Current Exemptions: | $2,686.05 |
| | | Taxes w/o Exemptions: | $2,686.06 |

## Improvement / Building

**Improvement #1:** Residential **State Code:** A1 **Living Area:** 1408.0 sqft **Value:** $79.200

| Type | Description | Class CD | Exterior Wall | Year Built | SQFT |
|---|---|---|---|---|---|
| LA | Living Area | A | SB | 1966 | 1408.0 |
| AG | Attached Garage | A | | 1966 | 377.0 |
| OP | Attached Open Porch | A | | 1966 | 116.0 |
| PAC | Terrace with cover | A | | 1966 | 375.0 |

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|---|---|---|---|---|---|---|---|
| 1 | RES | R/1 Family not Farm Single | 0.2011 | 8760.00 | 73.00 | 120.00 | $18,110 | $0 |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|---|---|---|---|---|---|---|
| 2015 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2014 | $88,530 | $18,110 | 0 | 106,640 | $0 | $106,640 |
| 2013 | $87,240 | $18,110 | 0 | 105,350 | $0 | $105,350 |
| 2012 | $79,200 | $18,110 | 0 | 97,310 | $0 | $97,310 |
| 2011 | $79,840 | $18,110 | 0 | 97,950 | $0 | $97,950 |
| 2010 | $82,410 | $18,110 | 0 | 100,520 | $0 | $100,520 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|---|---|---|---|---|---|---|---|

**2015 data current as of Oct 6 2014 1:51AM.**
**2014 and prior year data current as of Oct 2 2014 11:06AM**
**For property information, contact (210) 242-2432 or (210) 224-8511 or email.**
**For website information, contact (210) 242-2500.**

Website version: 1.2.2.2

Database last updated on: 10/6/2014 1:51 AM

© 2014 True Automation, Inc. All Rights Reserved. Privacy Notice

This site only supports Internet Explorer 6+, Netscape 7+ and Firefox 1.5+.

# APPELLEES APPENDIX

# EXHIBIT 6

SCANNED



# DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING *INFORMATION FROM THIS INSTRUMENT* BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THIS DEED OF TRUST is dated January 17, 2013, among Douglas J. Ullrich, whose address is 5740 FM 482N, Hondo, TX 78861 ("Grantor"); Wayne and Mary Hale, whose address is 9281 Nelson Road, San Antonio, TX (referred to below sometimes as "Beneficiary"); and Laura Galvan, whose address is 5730 Verbena, San Antonio, TX 78240 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Grantor conveys to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property, including without limitation such rights as Grantor may have in all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in BEXAR County, State of Texas:

All of Grantor's 50% undivided interest in his residence located at 3939 Starhill, San Antonio, Texas 78218, further described as Lot 8, Block 2, New City Block 13675, Fairfield Subdivision, Unit #4, within the corporate limits of the City of San Antonio, Bexar County, Texas, according to a plat thereof recorded in Vol. 5300, Page 75, Deed and Plat Records of Bexar County, Texas, subject to the conditions and restrictions of record in Vol. 5359, Page 748, Deed Records, Bexar County, Texas; and a 30 foot building set back line as shown on Plat recorded in Vol. 5300, Page 75, Deed and Plat Records, Bexar County, Texas.

Grantor hereby absolutely assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor. Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

GRANTOR'S WAIVERS. Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all Indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Grantor shall strictly perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

PURPOSE OF LOAN. The Note in the amount of $25,000.00 represents, in part or in whole, cash or other financial accommodations advanced or committed by Lender to Borrower on January 17, 2013 at Grantor's request, of which Grantor hereby acknowledges receipt.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of

1

Book 15997   Page 1429   18pgs



CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          10-13-14
        Deputy                              Date

68

V02142P7352

the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws. Grantor represents and warrants to Lender that: 1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and 2) agrees to indemnify and hold harmless Lender against any and all claims, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, soil, gravel or rock products without Lender's prior written consent. This restriction will not apply to rights and easements (such as gas and oil) not owned by Grantor and of which Grantor has informed Lender in writing prior to Grantor's signing of this Deed of Trust.

Removal of Improvements. Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the

2



CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          10.13.14
          Deputy                        Date

V02142P7353

conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Texas law.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust: Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and Lender's reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

LENDER'S EXPENDITURES. If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, or (B) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses paid by Lender for such purposes will then bear interest at the Note rate from the date paid by Lender to the date of repayment by Grantor. To the extent permitted by applicable law, all such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Deed of Trust:

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

3



CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____     10-13-14
        Deputy              Date

70          V02142P7354

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Compliance With Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

Survival of Promises. All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

CONDEMNATION, JUDGMENTS AND AWARDS. The following provisions relating to condemnation proceedings, judgments, decrees and awards for injury to the Property are a part of this Deed of Trust:

Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. To the extent permitted by applicable law, all judgments, decrees and awards for injury or damage to the Property, or any part of the Property, and awards pursuant to proceedings for condemnation of the Property, are hereby absolutely assigned to Lender, and if all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award, judgment or decree shall mean the award after payment of all reasonable costs, expenses, and attorney's fees incurred by Trustee or Lender in connection with the condemnation.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deed, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor

4



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____         10-13-14
        Deputy                              Date

71

V02142P7355

shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

FULL PERFORMANCE. If Borrower pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Grantor a release of this Deed of Trust lien and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. However, it is agreed that the payment of all the Indebtedness and performance of such obligations shall not terminate this Deed of Trust unless the liens and interests created hereby are released by Lender by a proper recordable instrument. Any filing fees required by law shall be paid by Grantor, if permitted by applicable law.

EVENTS OF DEFAULT. At Lender's option, Grantor will be in default under this Deed of Trust if any of the following happen: Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Break Other Promises. Borrower or Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Deed of Trust or in any agreement related to this Deed of Trust.

Compliance Default. Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

Default on Other Payments. Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

False Statements. Any representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

Defective Collateralization. This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

Death or Insolvency. The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

Taking of the Property. Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or Grantor's accounts with Lender. However, if Borrower or Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Borrower o Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

Breach of Other Agreement. Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Insecurity. Lender in good faith believes itself insecure.

Right to Cure. If any default, other than a default in payment is curable, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty 120 days, immediately initiates steps which Lender

5



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____        10-13-14
        Deputy                                                Date

V02142P7356

deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

Election of Remedies. All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

Accelerate Indebtedness. Lender may declare the unpaid principal balance of the Indebtedness due and payable. In no event will Borrower or Grantor be required to pay any unearned interest.

Foreclosure. If Lender invokes the power of sale, Trustee, at the request of Lender, may sell all or any portion of the Property at public auction to the highest bidder for cash at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale within the courthouse, between the hours of 10:00 A.M. and 4:00 P.M. on the first Tuesday of any month, after the Trustee or its agent has given notice of the time and place of sale and of the property to be sold as required by the Texas Property Code, as then amended.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

Collect Rents. As additional security for the payment of the Indebtedness, Grantor hereby absolutely assigns to Lender all Rents as defined in the Definitions section of this Deed of Trust. Until the occurrence of an Event of Default, Grantor is granted a license to collect and retain the Rents; however, upon receipt from Lender of a notice that an Event of Default exists under this Deed of Trust, Lender may terminate Grantor's license, and then Lender, as Grantor's agent, may collect the Rents. In addition, if the Property is vacant, Lender may rent or lease the Property. Lender shall not be liable for its failure to rent the Property, to collect any Rents, or to exercise diligence in any matter relating to the Rents. Lender shall be accountable only for Rents actually received. Lender neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the Property. Rents so received shall be applied by Lender first to the remaining unpaid balance of the Indebtedness, in such order or manner as Lender shall elect, and the residue, if any, shall be paid to the person or persons legally entitled to the residue.

Trustee's Powers. Grantor hereby jointly and severally authorizes and empowers Trustee to sell all or any portion of the Property together or in lots or parcels, as Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such Property good and sufficient deeds of conveyance of fee simple title, or of lesser estates, and bills of sale and assignments, with covenants of general warranty made on Grantor's behalf. In no event shall Trustee be required to exhibit, present or display at any such sale any of the Property to be sold at such sale. The Trustee making such sale shall receive the proceeds of the sale and shall apply the same as provided below. Payment of the purchase price to Trustee shall satisfy the liability of the purchaser at any such sale of the Property, and such person shall not be bound to look after the application of the proceeds.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, (2) vacate the Property immediately upon the demand of Lender, or (3) if such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Grantor expressly waives all damages sustained by reason thereof.

6



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____        10-13-14
        Deputy                        Date

V02142P7357

Sale of the Property. To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property. Trustee may convey all or any part of the Property to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to other exceptions to conveyance and warranty. Grantor waives all requirements of appraisement, if any. The affidavit of any person having knowledge of the facts to the affect that proper notice as required by the Texas Property Code was given shall be prima facie evidence of the fact that such notice was in fact given. Recitals and statements of fact in any notice or in any conveyance to the purchaser or purchasers of the Property in any foreclosure sale under this Deed of Trust shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. Any sale under the powers granted by this Deed of Trust shall be a perpetual bar against Grantor, Grantor's heirs, successors, assigns and legal representatives.

Proceeds. Trustee shall pay the proceeds of any sale of the Property (a) first, to the expenses of foreclosure, including reasonable fees or charges paid to the Trustee, including but not limited to fees for enforcing the lien, posting for sale, selling, or releasing the Property, (b) then to Lender the full amount of the Indebtedness, (c) then to any amount required by law to be paid before payment to Grantor, and (d) the balance, if any, to Grantor.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as Lender's attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Deed of Trust, Lender shall be entitled to recover from Borrower or Grantor Lender's reasonable attorneys' fees and actual disbursements that Lender necessarily incurs in pursuing such foreclosure.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other lienholder of the Property of the commencement of a foreclosure proceeding or of the commencement of any other action to which Lender may avail itself as a remedy, except to the extent required by applicable law or by written agreement.

Trustee. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Substitute Trustee. Lender, at Lender's option, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee. The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgment of the appointment by the beneficiary of this Deed of Trust. The successor or substitute trustee shall then succeed to all rights, obligations,

7



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____     10-13-14
        Deputy                              Date

74                    VO2142P7358



**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by and interpreted in accordance with federal law and the laws of the State of Texas. This Deed of Trust has been accepted by Lender in the State of Texas.

**Choice of Venue.** If there is a lawsuit, and if the transaction evidenced by this Deed of Trust occurred in Bexar County, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Bexar County, State of Texas.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Deed of Trust shall be joint and several, and all references to Grantor shall mean each and any Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Deed of Trust.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, notice of dishonor, notice of intent to accelerate, and notice of acceleration.

**Payment of Interest and Fees.** No matter what else may be stated in any other provision of this Deed of Trust or in any other document, Grantor may have with Lender, Grantor does not agree or intend to pay, and Lender does not agree or intend to charge, any amount of interest or for the indebtedness which would in any way cause Lender to contract for, charge or collect more for the indebtedness than the maximum Lender would be permitted to charge or collect by any applicable federal or Texas state law. Any such excess interest or unauthorized fee will be applied first to reduce the unpaid principal balance of the indebtedness, and when the principal has been paid in full, be refunded to Grantor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without

8

**CERTIFICATE**

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
        Deputy

10-13-14
Date

V02142P1359

75

releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

DEFINITIONS. The following words shall have the following meanings when used in this Deed of Trust:

Beneficiary. The word "Beneficiary" means Wayne and Mary Hale, and their successors and assigns.

Borrower. The word "Borrower" means MARY Y. DAHLMAN and includes all co-signers and co-makers signing the Note.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

Grantor. The word "Grantor" means Douglas J. Ullrich.

Guaranty. The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

Lender. The word "Lender" means WAYNE and MARY HALE, their successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

Note. The word "Note" means the promissory note dated January 17, 2013, in the original principal amount of $25,000.00 from Borrower to Lenders, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the promissory note or agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

Trustee. The word "Trustee" means Laura Galvan, whose address is 5730 Verbena, San Antonio, TX 78240 and any substitute or successor trustees.

9



CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____ 10-13-14
    Deputy            Date

76

V02142P7360

This instrument was acknowledged before me on January 17, 2013 by Douglas J. Ulbrich.

EXECUTED AND ACKNOWLEDGED, to be effective as of January 17, 2013.

BORROWER:

_____
DOUGLAS J. ULBRICH

LENDERS: _____     _____
WAYNE HALE                                MARY HALE

STATE OF TEXAS )
COUNTY OF BEXAR )

The above and foregoing instrument was acknowledged before me on the 17th day of January, 2013 by the above named Douglas J. Ulbrich.

_____
Notary Public, State of Texas

STATE OF TEXAS )
COUNTY OF BEXAR )

The above and foregoing instrument was acknowledged before me on the 17th day of January, 2013 by the above named Wayne Hale.

_____
Notary Public, State of Texas

STATE OF TEXAS )
COUNTY OF BEXAR )

The above and foregoing instrument was acknowledged before me on the 17th day of January, 2013 by the above named Mary Hale.

_____
Notary Public, State of Texas

10

JAN 23 2013

_____
COUNTY CLERK BEXAR COUNTY, TEXAS

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____     10-13-14
        Deputy                        Date

77

V02142P7361

# Gerard Rickhoff



COUNTY CLERK      BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

    I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

VOLUME 15987          PAGE 1498

    THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

    IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS 13th DAY OF October A.D., 20 14.

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.

V02142P7362

# APPELLEES APPENDIX

# EXHIBIT 7

No. 2011-PC-0686

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN PROBATE COURT |
| | § | |
| CONSUELLA PERKINS ULBRICH, | § | NUMBER 1 |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## AFFIDAVIT OF DEBBIE BYRD

Before me, the undersigned authority, on this day personally appeared Debbie Byrd. ("Affiant") who, being first duly sworn, upon oath states:

"My name is Debbie Byrd, and I live at _605 Cavan, Cibolo, Texas_. I am personally familiar with the life, family history and marital history of CONSUELLA PERKINS ULBRICH ("Decedent"), and I have personal knowledge of the facts stated in this affidavit.

"The Decedent was my Mother, and I knew her from my birth until her death, August 22, 2010. At the time of my Mother's death, her homestead was 3939 Starhill, San Antonio, Texas.

"My Mother had the following children:

    a.    Name: Robert T. Hope
           Date of Birth: May 20, 1943
           Name of Other Parent: William Henry Hope

    b.    Name: Brenda Darlene Wilson
           Date of Birth: May 7, 1945
           Name of Other Parent: William Henry Hope

    c.    Name: Debra Kay Byrd
           Date of Birth: August 19, 1959
           Name of Other Parent: William Henry Hope

"My Mother did not have or adopt any other children and did not take any other children into her home or raise any other children.

"Further, Affiant sayeth not."

Signed this 12th day of October 2014.

_Debbie Byrd_
Debbie Byrd, Affiant

80          V02142P7364

STATE OF TEXAS § § §

COUNTY OF *Bexar*

Sworn to and subscribed to before me on October 12, 2014, by Debra Kay Byrd.

NOTARY PUBLIC, State of Texas
My commission expires: *05-15-2016*

Barbara A Greene
My Commission Expires
05/15/2016

81   V02142P7365

# APPELLEES APPENDIX

# EXHIBIT 8

Kristie Artlitt: You say you have two homes, one is the Starhill home in San Antonio and the other one is the ranch in Hondo outside of Hondo

Mr. Ulbrich: Yes, yes

Kristie Artlitt: Do you homestead either one?

Mr. Ulbrich: I homestead one, and I stay at the other one.

Kristie Artlitt: Which one do you homestead?

Mr. Ulbrich: It is uh, on 3939 Starhill.

Kristie Artlitt: The San Antonio, one, okay, alrighty.

Mr. Ulbrich: I get mixed up.

Kristie Artlitt: I pass the witness.

Judge excuses the witness.

V02142P7367



V02142P7368

# AFFIDAVIT

| STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF BEXAR | § |

I, MONIKA HAEGELIN, certify that I transcribed the attached portion of the hearing of January 11, 2011, held in the Medina County Court at Law, in Cause Number 7970, In the Estate of Consuella Perkins Ulbrich, Deceased.

I further certify that I personally picked up a copy of the Disk from the County Clerk's office in Hondo, Texas and that said disk has not been tampered with.

I further state that the portion I transcribed was in 4:26:03 PM – Mrs. Arlitt – re cross examination of 6th witness Douglas Ulbrich is true and correct and is done verbatim.

_____
MONIKA HAEGELIN

**SUBSCRIBED AND SWORN TO BEFORE ME** by the said MONIKA HAEGELIN, this _31_ day of _January_ ,2012.

_____
Notary Public, State of Texas

Melissa Krueger
Notary Public,
State of Texas
Comm. Exp. 06-19-15

85    V02142P7369

# APPELLEES APPENDIX

# EXHIBIT 9



CLERK'S RECORD

Trial Court No. 2011PC0686
In the Probate Court No. 1
of Bexar County, Texas,
HONORABLE TOM RICKHOFF, Judge Presiding

IN THE ESTATE OF
CONSUELLA PERKINS ULBRICH, DECEASED

Appealed to the
Court of Appeals for __4TH__ District of Texas at San Antonio, Texas

Attorney for Appellant (S):
Name PHILIP M. ROSS
Address 1006 HOLBROOK ROAD
SAN ANTONIO, TX 78218
Telephone no. (210) 326-2100
Fax no. N/A

Delivered to the Court of Appeals for the __4TH__ District of Texas, at San Antonio, Texas on the __24TH__ day of OCTOBER, 2012.

GERARD RICKHOFF
Clerk, Probate Court No. 1
of Bexar County, Texas

By _____
DANIEL CEDA, DEPUTY

Appellate Court Cause No.
Filed in the Court of Appeals for the __4TH__ District of Texas, at San Antonio, Texas
this ___ day of _____, 2012.

_____, Clerk
By _____, Deputy

87          V02142P7371

## Designation of Homestead

**Date:** April 11, 2011

**Affiant/Claimant:** Douglas J. Ulbrich

**Current Record Title Holder of Property:** Douglas J. Ulbrich

**Property:** 160.00 Acres out of Survey No. 419, Abstract No. 1174, H.E. & W.T. RR Co., original Grantee, Medina County, Texas.

Title to the above described property is vested in Claimant.

Pursuant to section 41.005 of the Texas Property Code, Claimant designates the Property as Claimant and Claimant's family homestead.

_Douglas J. Ulbrich_
Douglas J. Ulbrich

STATE OF TEXAS       )

COUNTY OF MEDINA    )

This instrument was acknowledged before me on _April 11_, 2011, by Douglas J. Ulbrich.

_Notary Public, State of Texas_
My commission expires: 9/14/2011

LAURA BOGERT
MY COMMISSION EXPIRES
September 14, 2011

PREPARED IN THE OFFICE OF:
AFTER RECORDING RETURN TO:

Thomas J. Rothe, P.C.
1510 Avenue M, Suite 101
Hondo, Texas 78861
Tel: (830) 741-4141
Fax: (830) 426-4141

Designation of Homestead - Page Solo

10-77\Douglas\DoH

V02077P8350     0130

88     V02142P7372

# APPELLEES APPENDIX

# EXHIBIT 10

<u>NO. 2011-PC-0686</u>

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| CONSUELLA PERKINS ULBRICH, | § | NUMBER 1 (*on transfer from Probate #2*) |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## <u>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT</u>

On the 5TH day of November, 2014, came on to be heard the *Motion for Summary Judgment* filed by the Heirs of the Estate of Consuella Perkins Ulbrich, Robert Hope, Darlene Wilson, and Debbie Byrd; and, after hearing the argument of Counsel, the Court:

GRANTS the *Motion for Summary Judgment;*

FINDS, as a matter of law, that at the time of death of Consuella Perkins Ulbrich, the Homestead of Decedent existed at 3939 Starhill, San Antonio, Texas;

FINDS, as a matter of law, that the Texas Constitution's Survivor Homestead granted to Douglas Ulbrich, surviving spouse of Conseulla Perkins Ulbrich, deceased, existed at 3939 Starhill, San Antonio, Texas;

FINDS, as a matter of law, that Douglas Ulbrich has voluntarily abandoned and discontinued use of the Texas Constitution's Survivor Homestead located at 3939 Starhill, San Antonio, Texas;

FINDS, as a matter of law, that Douglas Ulbrich cannot transfer the Texas Constitution's Survivor Homestead to any other property;

Signed: _____November 5th_____, 2014

JUDGE PRESIDING

FILED

NOV 05 2014

GERARD RICKHOFF
CLERK PROBATE COURT NO. 1
BEXAR COUNTY, TEXAS
BY_____
DEPUTY

1

V02144P1963

269

**APPROVED AS TO FORM**:

KRISTINE ARLITT, pLLC

By: _____
Kristine Arlitt, Attorney at Law
Texas Bar Number 24034117
206 East Locust Street
San Antonio, Texas 78212
PO Box 90771
San Antonio, Texas 78209
Telephone:        210-821-6101
Cellular:         210-269-6101
Facsimile:       210-821-6105
*Attorney for the Heirs, Robert Hope, Darlene Wilson, and Debra Byrd*


_____
Philip M. Ross
Attorney at Law
Texas Bar Number 17304200
1006 Holbrook Road
San Antonio, Texas 78218
*Attorney for Douglas Ulbrich*


_____
William Bailey
Attorney at Law
Texas Bar Number _____
1100 NW Loop 410, Suite 700
San Antonio, Texas 78213
*Court Appointed Temporary Administrator*

2

V0 2 1 4 4 P 1 9 6 4
270

# APPELLEES APPENDIX

# EXHIBIT 11

## NO. 2011-PC-0686

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| | § | |
| CONSUELLA PERKINS ULBRICH | § | NUMBER 2 |
| | § | |
| DECEASED | § | BEXAR COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In response to the request of DOUGLAS J. ULBRICH, the Court makes and finds the following as original Findings of Fact and Conclusions of Law in accordance with Rules 296 and 297 of the Texas Rules of Civil Procedure.

*Findings of Fact – Homestead*

1. CONSUELLA PERKINS ULBRICH, Deceased, died intestate on August 22, 2010.

2. At the time of her death, CONSUELLA PERKINS ULBRICH, Deceased, was married to DOUGLAS J. ULBRICH.

3. At the time of her death, CONSUELLA PERKINS ULBRICH, Deceased, had three adult children from a prior marriage and no minor children.

4 The rightful heirs of the Estate of CONSUELLA PERKINS ULBRICH, deceased, are the Decedent's three adult children, ROBERT HOPE, DARLENE WILSON, and DEBRA BYRD.

5. During the years 1998 through 2010, DOUGLAS J. ULBRICH and CONSUELLA PERKINS ULBRICH, deceased, designated the residence located at 3939 Starhill, San Antonio, BEXAR COUNTY, Texas, 78029, as their homestead.

6. On the date of death of CONSUELLA PERKINS ULBRICH, August

1

"A" 241   V02099P7287   GB

22, 2010, the homestead of DOUGLAS J. ULBRICH and CONSUELLA PERKINS ULBRICH, was 3939 Starhill, San Antonio, Bexar County, Texas.

7. On February 13, 2012, the Court ruled that the homestead of DOUGLAS J. ULBRICH and CONSUELLA PERKINS ULBRICH, Deceased, was 3939 Starhill, San Antonio, Bexar County, Texas which Order is now final not having been appealed.

8. DOUGLAS J. ULBRICH, surviving spouse of CONSUELLA PERKINS ULBRICH, Deceased, received a statutory Probate Homestead right to 3939 Starhill, San Antonio, Bexar County, Texas, pursuant to the Texas Constitution, Article XVI; Prob. Code §§271 and 283.

9. DOUGLAS J. ULBRICH, surviving spouse of CONSUELLA PERKINS ULBRICH, Deceased, voluntarily abandoned the Probate Homestead at 3939 Starhill, San Antonio, Bexar County, Texas, on January 11, 2012.

10. DOUGLAS J. ULBRICH, surviving spouse of CONSUELLA PERKINS ULBRICH, Deceased, reaffirmed his voluntary abandonment of the Probate Homestead on January 16, 2012.

11. There was no pre-nuptial or post-nuptial agreements executed between CONSUELLA PERKINS ULBRICH, deceased, and DOUGLAS J. ULBRICH.

### Findings of Fact – 3939 Starhill, San Antonio, Bexar County, Texas

12. On August 22, 2010, the residence located at 3939 Starhill, San Antonio, Bexar County, Texas, was owned as follows:

    a. The Estate of CONSUELLA PERKINS ULBRICH, Deceased, owns a Fifty percent (50%) undivided community interest in 3939 Starhill, San Antonio, Bexar County, Texas.

2

242 V02099P7288

b. DOUGLAS J. ULBRICH, owns a Fifty percent (50%) undivided community interest in 3939 Starhill, San Antonio, Bexar County, Texas.

## Findings of Fact – City Lots Located in Hondo, Texas

13. On August 22, 2010, the two (2) lots located at 1608 Avenue J., Hondo, Medina County, Texas; and 1002 17th Street, Hondo, Medina County, Texas, respectively, were owned as follows:

a. The Estate of CONSUELLA PERKINS ULBRICH, Deceased, owns a Forty percent (40%) undivided community interest in 1608 Avenue J., Hondo, Medina County, Texas; and 1002 17th Street, Hondo, Medina County, Texas, respectively.

b. DOUGLAS J. ULBRICH, owns a Forty percent (40%) undivided community interest in 1608 Avenue J., Hondo, Medina County, Texas; and 1002 17th Street, Hondo, Medina County, Texas, respectively.

c. DOUGLAS J. ULBRICH, owns a Twenty percent (20%) undivided separate property interest in 1608 Avenue J., Hondo, Medina County, Texas; and 1002 17th Street, Hondo, Medina County, Texas, respectively.

## Findings of Fact – 160 Acres Located in Medina County, Texas

14. On August 22, 2010, the real property located at 5740 FM 462, North Medina County, Texas, consisting of approximately 160 acres of rural land, mineral rights, and water rights, was owned as follows:

a.    The Estate of CONSUELLA PERKINS ULBRICH, Deceased, owns a Twenty-Five percent (25%) undivided community interest in the real property located at 5740 FM 462, North Medina County, Texas, consisting of approximately 160 acres of rural land, mineral rights, and water rights.

b.    DOUGLAS J. ULBRICH, owns a Twenty-Five percent (25%) undivided community interest in the real property located at 5740 FM 462, North Medina County, Texas, consisting of approximately 160 acres of rural land, mineral rights, and water rights.

c.    DOUGLAS J. ULBRICH, owns a Fifty percent (50%) undivided separate property interest in the real property located at 5740 FM 462, North Medina County, Texas, consisting of approximately 160 acres of rural land, mineral rights, and water rights.

*Findings of Fact – Personal Property*

15.    WILLIAM D. BAILEY, the Court appointed Temporary Administrator of the Estate of CONSUELLA PERKINS ULBRICH, Deceased, has been unable to file a complete Inventory and Appraisement for the reason that DOUGLAS J. ULBRICH, the surviving spouse, has failed and refused to provide the Court Appointed Temporary Administrator with an Inventory of the assets of the estate and/or an accounting of the income of the Estate of CONSUELLA PERKINS ULBRICH and DOUGLAS J. ULBRICH.   The Court Appointed Temporary Administrator has made numerous requests for such Inventory and Accounting of the Estate's income on three (3) different attorneys DOUGLAS J. ULBRICH has been represented by over the past two (2) years.

4

16. On or about August 10, 2012, the Court entered its Order styled "Order Awarding Exempt Property" that, in part:

a. Found the personal property of the Estate is exempt;

b. Ordered certain items of exempt personal property to be set aside for the benefit of DOUGALS J. ULBRICH;

c. Ordered certain items of the exempt property to be set aside for the benefit of the heirs, ROBERT HOPE, DARLENE WILSON and DEBRA BYRD, the adult children of the Decedent from the prior marriage;

d. Ordered DOUGLAS J. ULBRICH to make all such items awarded to the adult children of the Decedent to be made available.

17. On or about August 23, 2012, DOUGLAS J. ULBRICH filed his Request for Emergency Relief with the Fourth Court of Appeals. On or about August 24, 2012, the Fourth Court of Appeals DENIED DOUGLAS J. ULBRICH's request citing TEX. R.APP. P. 24.1 apparently referring to the term "Judgment Debtor" which is not the character of either of the parties in this litigation.

18. The principals of Res Judicata and Collateral Estoppel apply to the Order of February 13, 2012, is no longer appealable.

19. Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

## Conclusions of Law

1. The Order dated February 13, 2012, finding CONSUELLA PERKINS ULBRICH's homestead at the time death to be 3939 Starhill, San Antonio, Texas, is a final, appealable order.

5

2      The Order dated August 10, 2012, styled "Order Finding Res Judicata and Collateral Estoppel Apply" concluded the principles of Res Judicata and Collateral Estoppel apply to the Order dated February 13, 2012, which was not timely appealed.

3.      The Order dated August 10, 2012, and styled "Order Awarding Exempt Property" is well founded in law pursuant to:

"Probate Code §272. TO WHOM DELIVERED

The exempt property set apart to the surviving spouse and children shall be delivered by the executor or administrator without delay as follows:

     c.      If there be children of the deceased of whom the surviving spouse is not the parent, the share of such children in such exempted property, except the homestead, shall be delivered to such children if they be of lawful age..."

4.      Neither of the parties are judgment debtors entitled to relief pursuant to TEX. R. APP. P. 24.1.

5.      All property of the ESTATE OF CONSUELLA PERKINS ULBRICH, deceased, is presumed to be community property. TEX. FAM. CODE §3.003.

6.      All income derived from earnings and separate property of a spouse is deemed to be community property of the spouses. TEX. FAM. CODE §3.002.

7.      All property acquired during marriage is presumed to be community property. TEX. FAM. CODE §3.003.

8.      The surviving spouse's homestead right is to the continued use of the homestead as it existed at the time of the death of the husband or wife. *Good v. Good*, 293 S.W. 621, 623 (Tex. 1927).

6

9. A surviving spouse has a right to a life estate in the homestead claimed by the decedent at the time of the decedent's death. If the surviving spouse elects to abandon the survivor homestead, the homestead right dissolves. *Good v. Good*, 293 S.W. 621, 623 (Tex. 1927).

10. A party can have only one (1) homestead at a time. *Panhandle Construction Co., v. Continental Southland Savings and Loan Association*, 110 S.W. 2d 632, 634 (Tex. Civ. App. 1937); Grimes v. Cline, 300 S.W. 235, 236 (Tex. Civ. Ap;p. 1927)..

11. A party cannot have both a rural and an urban homestead at the same time. *R.B. Spencer & Co. v. Green*, 203 S.W. 2d 957, 959 (Tex. Civ. App. 1947).

12. A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing. TEX. PROP. CODE §5.021

SIGNED on ___10 Dec 12___.

_____
JUDGE PRESIDING

FILED

DEC 1 0 2012
GERARD RICKHOFF
CLERK PROBATE COURT NO. 2
BEXAR COUNTY, TEXAS
BY: _____
DEPUTY

7

# APPELLEES APPENDIX

# EXHIBIT 12



Doc# 2961
Vol. 143  Page 838
02/15/2011  10:40AM

No. 7970

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| CONSUELLA PERKINS ULBRICH, | § | OF |
| | § | |
| DECEASED | § | MEDINA COUNTY, TEXAS |

## ORDER OF TRANSFER TO BEXAR COUNTY, TEXAS

On January 11, 2011, came on to be heard Movants', Robert T. Hope, Brenda Darlene Wilson, and Debra Kay Byrd, Application to Determine Heirship and Application for Administration; and after considering the testimony and evidence presented to the Court and the argument of counsel, the Court:

FINDS the county of residence of Consuella Perkins Ulbrich, deceased, at the time of her death was Bexar County, Texas.

FURTHER FINDS that Cause Number 7970, *In the Estate of Consuella Perkins Ulbrich, deceased*, is a proceeding to determine heirship.

FURTHER FINDS that venue of Cause Number 7970, *In the Estate of Consuella Perkins Ulbrich, deceased*, is Bexar County, Texas, pursuant to Tex. Prob. Code §§6, 48.

ORDERS that Cause Number 7970, *In the Estate of Consuella Perkins Ulbrich, deceased*, is hereby transferred to Bexar County, Texas.

ORDERS that the Clerk of the Court is to transfer to Bexar County, Texas, the file, transcript, evidence, record, statement of fact, and all documents relating to Cause Number 7970, *In the Estate of Consuella Perkins Ulbrich, deceased*, to the Probate Court, Bexar County, Texas.

~~ORDERS that the cost of the transfer shall be taxed as a cost of the administration of the~~

Doc# 2961
Vol. 143 Page 839
02/15/2011 10:40AM

Estate of Consuella Perking Ulbrich, deceased.

DATED: February 14, 2011

FILED IN MY OFFICE
LISA J. VERNETTE

FEB 14 '11 PM -2 35

JUDGE PRESIDING

AGREED: COUNTY CLERK, MEDINA CO.

Kristine Arlitt, LLC

By: KRISTINE ARLITT
Attorney at Law
Texas Bar No. 24034117
206 East Locust Street
San Antonio, Texas 7821
PO Box 90771
San Antonio, Texas 78209
Telephone 210-821-6101
Telecopier 210-821-6105
Cellular 210-269-6101
    Attorney for:   Robert T. Hope
                    Brenda Darlene Wilson
                    Debra Kay Byrd

Eric L. Barnett J.
Attorney at Law
Texas Bar No. 24000060
611 Main Street
Bandera, Texas 78003-9100
Telephone: 830-796-8415
Telecopier: 830-796-9600
    Attorney for Douglas J. Ulbrich

# APPELLEES APPENDIX

# EXHIBIT 13



(5) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the decedent;

(6) an extension of credit on the homestead if the requirements of Section 50(a)(6), Article XVI, Texas Constitution, are met; or

(7) a reverse mortgage.

History of Prob. Code §270: Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1979, 66th Leg., ch. 24, §1, eff. Aug. 27, 1979; Acts 1999, 76th Leg., ch. 487, §1 (eff. Sept. 1, 1999), ch. 855, §9 (eff. Sept. 1, 1999). Source: TRCS art. 3499.

### ANNOTATIONS

*Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 130 (Tex.1991). "[H]omestead protection ... can arise only in the person or family who has a present possessory interest in the subject property. Accordingly, one who holds only a future interest in property with no present right to possession is not entitled to homestead protection in that property."

*Connor Bros. v. Williams*, 112 S.W.2d 709, 711 (Tex.1938). "While the homestead may not be sold for payment of general debts of the estate, it may be sold for the payment of a debt secured by a valid lien against it, and the exclusive jurisdiction for making the sale of the homestead for such latter purpose, while administration is pending, is in the probate court."

*Harms v. Ehlers*, 179 S.W.2d 582, 583 (Tex.App.—Austin 1944, writ ref'd). "'[U]pon the death of a judgment debtor and an administration upon his estate, a judgment for a debt only, without the foreclosure of any lien property, ceases to have the usual force of a judgment, and becomes merely a claim to be established in the same manner as other claims for money.'"

*Sutton v. Lewis*, 176 S.W.2d 765, 767 (Tex.App.—Fort Worth 1943, writ ref'd). "If the homestead is sold for the purpose of paying a debt secured by a lien against it, and if the property is sold for more than enough to satisfy the lien, the excess must be paid to the administrator, who is the only person authorized to receive it. He then holds it subject to the lawful claims of those who may be entitled to it."

### PROB §271. EXEMPT PROPERTY TO BE SET APART

(a) Unless an affidavit is filed under Subsection (b) of this section, immediately after the inventory, appraisement, and list of claims have been approved, the court shall, by order, set apart:

(1) the homestead for the use and benefit of the surviving spouse and minor children; and

(2) all other property of the estate that is exempt from execution or forced sale by the constitution and laws of this state for the use and benefit of the surviving spouse and minor children and unmarried children remaining with the family of the deceased.

(b) Before the approval of the inventory, appraisement, and list of claims:

(1) a surviving spouse or any person who is authorized to act on behalf of minor children of the deceased may apply to the court to have exempt property, including the homestead, set aside by filing an application and a verified affidavit listing all of the property that the applicant claims is exempt; and

(2) any unmarried children remaining with the family of the deceased may apply to the court to have all exempt property other than the homestead set aside by filing an application and a verified affidavit listing all of the other property that the applicant claims is exempt.

(c) An applicant under Subsection (b) of this section bears the burden of proof by a preponderance of the evidence at any hearing on the application. The court shall set aside property of the decedent's estate that the court finds is exempt.

History of Prob. Code §271: Acts 1955, 54th Leg., p. 88, ch. 55, eff. Jan. 1, 1956. Amended by Acts 1979, 66th Leg., ch. 24, §2, eff. Aug. 27, 1979; Acts 1993, 73rd Leg., ch. 846, §18, eff. Sept. 1, 1993; Acts 2005, 79th Leg., ch. 551, §4, eff. Sept. 1, 2005. Source: TRCS art. 3485.

See also Jamieson, *Creditors' Claims & Allowances in Decedents' Estates*, Building Blocks of Wills, Estates & Probate, State Bar of Texas CLE, ch. 5.1 (2009).

### ANNOTATIONS

*Bolton v. Bolton*, 977 S.W.2d 157, 159 (Tex.App.—Tyler 1998, no pet.). "We conclude that during administration of an estate, the surviving spouse can retain possession of tangible exempt personal property under the 'use and benefit' provision of the [Probate] Code, but when the administration terminates, the decedent's interest in these items must pass to his heirs or devisees."

*Ward v. Braun*, 417 S.W.2d 888, 891 (Tex.App.—Corpus Christi 1967, no writ). "Under §271, ... all the exempt property of the estate should be set aside for the use of the widow herein. The fact that she owns other property in her separate right does not affect the matter...."

# APPELLEES APPENDIX

# EXHIBIT 14



Vernon's Ann.Texas Const. Art. 16, § 52

Page 1

**C**

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
    Constitution of the State of Texas 1876 (Refs & Annos)
        Article XVI. General Provisions
            **§ 52. Descent and distribution of homestead; restrictions on partition**

Sec. 52. On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT